633 A.2d 1100

COMMONWEALTH of Pennsylvania, Appellee,

v.

Jerry MARSHALL, Jr., Appellant.

Supreme Court of Pennsylvania.

Argued Dec. 7, 1992.

Decided Nov. 5, 1993.

Application for Reargument Denied Feb. 9, 1994.*

* Justice Castille did not participate. See No. 127 Judicial Administration Docket No. 1.

490

Susan V. Kahn, Haverford, for appellant.

Ronald Eisenberg, Deputy Dist. Atty., Catherine Marshall, Chief, Appeals Div., Norman Gross, Asst. Dist. Atty., Robert A. Graci, Chief Deputy Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION

MONTEMURO, Justice.

Jerry Marshall, Jr. was convicted of two counts of murder in the first degree after a jury trial in the Court of Common Pleas of Philadelphia County, Pennsylvania. Finding that the murder was accompanied by two aggravating circumstances and no mitigating circumstances, the jury sentenced appellant to death. Post-trial motions were denied, and this court

obtained jurisdiction pursuant to 42 Pa.C.S. § 9711(h) and Pa.R.A.P.1941.

The facts of this case, as adduced at trial, are as follows. On the morning of May 20, 1987, appellant and his wife, Donna, engaged in an argument which was overheard by Donna Marshall's nine year old daughter, Shanisha Dunbar. Shanisha woke her younger sister, Ayesha, and told her to go and see what was happening. Ayesha went to the hallway, and looked in her mother's bedroom. Inside the bedroom, she saw her mother lying on the floor, tied to the side of the bed with a telephone cord, being choked by appellant. When Ayesha told her sister what was happening, Shanisha ran to the kitchen, and returned to her bedroom with a knife which she placed under her pillow.

Appellant, seeing what Shanisha had done, went after her, put her in the bedroom with her mother, and shut the door. Ayesha then heard what she described as heads banging on the floor, and someone spitting up. Shortly thereafter, appellant emerged from the bedroom, and closed the door behind him. Ayesha saw him wash blood from his hands. He then gathered Ayesha and her two other siblings and left the apartment, telling the children that their mother was sick, and that Shanisha was helping her.

Ayesha testified that, as appellant was driving the children to another location, he stopped the car at least two times to stick a needle in his arm. Appellant drove the children to the home of a woman friend, Lyla Jenkins. He left the children with Ms. Jenkins between 10:00 and 12:00 in the morning, telling her he would be back for them shortly. Appellant did not return until the next morning. The children stayed with Ms. Jenkins until Friday, May 22, when they were picked up by members of Donna Marshall's family.

After dropping the children off with Ms. Jenkins, appellant met Scotty Brecher. Mr. Brecher and another friend were injecting cocaine inside of Mr. Brecher's van. Appellant told Mr. Brecher that he had killed his wife and stepdaughter. He explained that he was trying to get some money from his

wife's purse while she was sleeping that morning, but that she woke up and caught him. The couple then got into an argument and appellant told Mr. Brecher that he beat her to death. He further elaborated that because his stepdaughter, Shanisha, had seen the incident, he had killed her to "shut her the f— up." He stated that he had used a hammer to commit the murders, and that he sanitized it after he was finished. According to Mr. Brecher, appellant was emotionless when he recited the gruesome details of the murders. Because of this lack of emotion, Mr. Brecher did not believe that appellant was telling the truth.

Later that evening, around midnight, appellant and Mr. Brecher, after injecting some more cocaine, went to appellant's apartment building. Before entering the apartment, appellant asked Mr. Brecher if he was ready for what he was about to see. Appellant then opened the bedroom door and Mr. Brecher saw the bodies of Donna Marshall and her daughter, Shanisha. Appellant stepped over the bodies to remove a television set which he later traded for cocaine.

The next morning, appellant and Mr. Brecher sold Donna Marshall's car so that they could purchase more cocaine. Finally, on Friday morning, appellant decided that he should flee the city. Mr. Brecher withdrew money from his bank account and gave it to appellant to aid him in his flight. Thereafter, appellant headed for South Carolina.

On the same morning, police found the bodies of Donna Marshall and her daughter, Shanisha. An autopsy determined that Donna Marshall had been strangled, and that Shanisha died of a fractured skull, brain hemorrhage, cerebral swelling, and a laceration of her heart. Shanisha also had incurred multiple injuries of the neck, and a puncture wound of her right cheek.

On May 23, 1987, an arrest warrant was issued for appellant who was finally located in Charleston, South Carolina in February 1988, and was returned to Philadelphia on April 12, 1988. At his jury trial in October of 1989, appellant conceded that he had killed both his wife and stepdaughter, but con-

tended that, because of his drugged condition at the time of the murders, he had not intended to do so. Appellant did not present any evidence in support of this contention, but instead relied on the testimony of the Commonwealth's witnesses to establish his drugged condition. Finding that there was no evidence to support his claim that he was actually in a drugged state at the time of the murders, the trial court refused to instruct the jury on voluntary intoxication. After three days of testimony, the jury returned a verdict of guilty of two counts of first degree murder, and thereafter sentenced appellant to death.

Through appellate counsel, appellant asserts numerous contentions of trial error and ineffective assistance of counsel. Although he does not raise the issue of the sufficiency of the evidence, we are required to review the sufficiency of the evidence to sustain a conviction in all capital cases. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 26 n. 3, 454 A.2d 937, 942 n. 3 (1982). In making such a review, we are required to view all of the evidence, and the reasonable inferences therefrom, in the light most favorable to the Commonwealth as the verdict winner, and determine whether there is sufficient evidence to enable the jury to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Bryant*, 524 Pa. 564, 567, 574 A.2d 590, 592 (1990). After a careful review of the record, and as demonstrated by the facts as set forth above, we find that the evidence was sufficient to find every element of the crime beyond a reasonable doubt.

The first argument raised by appellant is that his trial counsel was ineffective for not challenging or striking a juror who had experienced the murder of his future son-in-law, and the near murder of a child. During *voir dire* a potential juror (later selected to sit on the jury) stated that, two and one half years prior to trial, his daughter's fiance and his 18 month old granddaughter were the victims of a robbery. The fiance was shot and killed, but the infant was unharmed. The juror did not actually witness the crime, but saw the victims at the hospital following the incident. Appellant argues that the

failure of his trial counsel to challenge or strike this juror deprived him of effective assistance of counsel.

The standard for determining ineffective assistance of counsel in capital cases, as in all criminal cases, is whether the underlying claim is of arguable merit, whether the course chosen by counsel had some reasonable basis designed to effectuate his client's interest, and whether the defendant has demonstrated prejudice. *Commonwealth v. Basemore,* 525 Pa. 512, 582 A.2d 861 (1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 1191, 117 L.Ed.2d 432 (1992). Trial counsel is presumed to have rendered effective assistance and appellant has the burden of proving otherwise. *Commonwealth v. March,* 528 Pa. 412, 598 A.2d 961 (1991).

Instantly, we find that appellant's underlying claim is devoid of arguable merit. The juror was asked if, in light of his experience, he could give appellant a fair and impartial trial. He responded that he could. He was further asked if he could follow the judge's instructions and be fair and impartial to all parties. The juror responded that, without a doubt, he could certainly do so. Given the juror's unequivocal response that he could give appellant a fair and impartial trial and follow the judge's instructions, the trial court could have properly refused to excuse this juror for cause if requested to do so. *Commonwealth v. DeHart,* 512 Pa. 235, 516 A.2d 656, *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3241, 97 L.Ed.2d 746 (1987) (trial court could properly refuse to excuse a juror for cause whose friend had been the victim of a homicide where the juror stated that she was willing and able to be impartial). *See also Commonwealth v. Colson,* 507 Pa. 440, 490 A.2d 811, *cert. denied,* 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986). Accordingly, trial counsel could not be ineffective for failing to have this juror excused for cause.

Trial counsel was also not ineffective for failing to use a peremptory challenge against this juror. Even assuming *arguendo* that the claim has arguable merit, the ineffectiveness claim fails because counsel had a reasonable basis for his decision not to strike the juror. At the PCRA hearing, trial

counsel testified that he felt that, given the juror's responses, he could give appellant a fair trial. He also believed that he had developed a rapport with the juror because the two men had joked about his name during *voir dire.* Additionally, during the *voir dire,* trial counsel and appellant had a discussion as to the acceptability of this juror. Thus, since counsel was able to articulate a reasonable basis for his tactical decision not to use a peremptory strike against this juror, he cannot be found ineffective. *Commonwealth v. Tressler,* 526 Pa. 139, 584 A.2d 930 (1990).

Appellant's second argument is that the trial court erred in denying a challenge for cause to a juror whose brother-in-law had killed an infant. During *voir dire,* one of the prospective jurors (who did not sit on the jury panel because appellant used a peremptory challenge against her) stated that her former brother-in-law had been convicted of manslaughter of an infant. This venireperson also stated, however, that she could give appellant a fair trial, and that she would follow the instructions given by the judge. As stated above, a trial judge may properly refuse to excuse a juror for cause where the judge believes that the juror would be able to be fair and impartial. *DeHart,* 512 Pa. at 248, 516 A.2d 656. Such a determination is to be made by the trial judge based on the juror's answers and demeanor, and will not be reversed absent a palpable abuse of discretion. *Id.* Finding no abuse of discretion instantly, we refuse to reverse the decision of the trial judge.

Appellant's third argument is that the trial court erred in refusing to instruct the jury that his drugged condition could negate the specific intent to kill, and reduce the crime of murder from first to third degree. It is true that voluntary intoxication can reduce the crime of murder from first to third degree. In order to be entitled to a charge of voluntary intoxication, however, there must be evidence in the case sufficient to place appellant's mental condition in issue. *Commonwealth v. Rose,* 457 Pa. 380, 321 A.2d 880 (1974). The evidence must show that appellant was so "overwhelmed or

overpowered by [drugs] to the point of losing his faculties or sensibilities" at the time the crime was committed. *Commonwealth v. Tilley*, 528 Pa. 125, 136, 595 A.2d 575, 580 (1991).

Instantly, appellant produced no evidence to support his contention that he was in a drugged condition at the time of the murders. While it is true that a defendant can rely on the testimony of Commonwealth witnesses to support such an assertion, in the instant case there was simply no evidence given by anyone to support the claim. At the time of the murders, the only people present were Mr. and Mrs. Marshall and their children. No one else had seen appellant since the night before the murders. Although his stepdaughter, Ayesha, testified that she saw him inject cocaine *after* the murders, no one testified that he took drugs just prior to committing the crimes. The first person to see Mr. Marshall after the murders was Lyla Jenkins, the woman who watched the children for several days. Ms. Jenkins testified that Mr. Marshall did not appear to be drunk, high, or in any kind of altered condition when he left the children with her. Several other people testified that they saw appellant in the hours and days *after* the murders, and that he appeared to be under the influence of drugs *at those times*. Several witnesses also testified that appellant had a drug addiction problem before and after the murders. This testimony, that appellant was in an altered state *after* the murders, and that he had a drug addiction problem, does not demonstrate or place in issue the question of whether he was in fact in an altered state *when he committed* the murders.

Appellant claims that the testimony of Mr. Brecher supports his assertion that he was in a drugged condition at the time of the murders. Specifically, he claims that the following portion of Mr. Brecher's testimony indicates that he was under the influence of drugs at the time of the murders:

Mr. Brecher: You asked me when I first saw Mr. Marshall was he high. At that particular time I said I cannot swear to it. Now if you are going to ask me was he high when he told me what he told me, yes, because he had gotten high

with me in the van before he asked to speak to me in private.

Defense Counsel: When he told you about the incident that occurred in the apartment?

Mr. Brecher: Yes.

Defense Counsel: All right, did he indicate to you that he was high at the time?

Mr. Brecher: No, he did not.

Defense Counsel: Do you recall testifying on May 12, 1988, at the preliminary hearing?

Mr. Brecher: Yes.

Defense Counsel: Do you recall being asked the following question and giving the following answer on page 18? "When he discussed the incident with you, did he indicate to you that he was high at the time of the incident? Answer: I believe I recall that, yes." Did he tell you he was high at the time of the incident?

Mr. Brecher: I believe he did tell me that. I can't be sure, you are asking me about an incident that happened over a year ago about an incident that occurred over two years ago, there may be certain discrepancies in my testimony—

Defense Counsel: I am asking you about your testimony that you gave at the preliminary hearing.

Mr. Brecher: And I am replying to you.

(objection made by prosecutor)

Mr. Brecher: Yes, I believe he did tell me that he was high at the time. I'm telling you that I don't remember. Thank you for refreshing my memory.

(Notes of Testimony Vol. II p. 46–47.)

Appellant argues that this testimony alone was sufficient to put in issue his alleged impairment, and entitled him to an instruction on the intoxication defense. We disagree.

Initially, we note that the reliability of this evidence is very minimal. Mr. Brecher hesitantly stated that appellant might have told him that he was high at the time of the murders. This possible self-serving statement by appellant to Mr.

Brecher certainly does not support the conclusion that he was "overwhelmed or overpowered" to such an extent as to be incapable of forming the specific intent to murder. Additionally, other evidence showed that appellant was thinking and acting coherently during the entire incident, i.e., he realized that Shanisha had witnessed his killing her mother and thus killed her to keep her quiet, he washed his hands after the murders, he gathered his remaining children to take them to a baby-sitter and he drove an automobile to Lyla Jenkin's house where he left the children. Accordingly, since there was scant evidence to show that appellant was under the influence of drugs when he actually committed the murders and no evidence to show that he was overpowered or overwhelmed by drugs at the time of the murders, there was no basis for an intoxication defense. The trial court, therefore, correctly refused to instruct the jury on that basis. *See Commonwealth v. Tilley,* 528 Pa. 125, 595 A.2d 575 (1991) (defendant was not entitled to an intoxication defense even though the evidence indicated that he had consumed alcohol and that one of his friends stated that he appeared drunk, because the evidence was not sufficient to show that he was so "overwhelmed or overpowered" to be incapable of forming the specific intent to murder.)

■■■ The fourth issue presented is that the trial court erred in instructing the jury that an intent to kill may be inferred from the use of one's hands upon the throat of another, or from the use of deadly force upon a vital part of the body of a child [of youthful years]. Appellant also argues that trial counsel was ineffective for failing to object to this instruction. As he recognizes, it is well established that an intent to kill may be inferred from proof that the actor used a deadly weapon upon a vital portion of the body of another. *Commonwealth v. Duffey,* 519 Pa. 348, 548 A.2d 1178 (1988). Appellant argues, however, that the instruction permitted an inference of an intent to kill where the inference did not logically flow from the given facts, i.e., the use of hands on a woman's throat, and the use of a hammer on a child. The law holds that, in the absence of direct or concrete evidence of a

specific intent to kill, where deadly force is knowingly applied by a defendant to his victim, the intent to kill may be as evident as if the defendant had verbally announced his intent. *Commonwealth v. Meredith*, 490 Pa. 303, 416 A.2d 481 (1980). Thus if the jury concluded that deadly force was knowingly applied to a vital part of the body, the jury could infer that the defendant intended to cause the death that resulted from his actions. We cannot agree with appellant that the use of his hands around the throat of his wife, and the use of a hammer on the body of his young stepdaughter could not constitute the use of deadly force on a vital portion of another's body. Contrary to appellant's argument, the court's instruction did not improperly dilute the Commonwealth's burden of proof. The trial court merely tailored the standard intent to kill instructions to the facts of this case. The judge instructed the jury that they could draw the inference if the facts supported it, but that they were not required to do so. We find no error with this instruction and, thus, find that trial counsel cannot be ineffective for failing to object to the instruction.

 Appellant's fifth argument is that prosecutorial misconduct during closing argument deprived him of a fair trial and that his trial counsel was ineffective for failing to object. More specifically, he asserts that the following comments by the prosecutor during closing arguments constitute reversible error:

And remember what Ayesha said when he walked out, he walked in the kitchen and he washed the blood from his hands. And I said it before and I will say it again, if you look closely at Mr. Marshall, you can see that the blood is not gone, it is still on his hands. Because the blood of Shanisha Dunbar doesn't wash off that and the blood of Donna Marshall doesn't wash off that easily. It's still there, and it is for you to say so.

And one last thing. Remember what Scotty Brecher said? Surprised me, I didn't know what he was going to say. I asked him did you check to see if Shanisha and Donna Marshall were dead or just injured? And he said I knew they were dead. Because I looked at them and their eyes

were open. So they were still open and they look to you for justice.

Come back in and say that and do your duty and close the eyes of the dead.

Appellant argues that his trial counsel was ineffective for failing to object to these comments. He argues that the remarks impermissibly purported to represent the victim's personal beliefs, and also appealed to the fears of the jurors by implying that the victims would not rest, i.e., close their eyes, unless they returned a verdict of guilty of first degree murder. We disagree.

The standard for determining ineffective assistance of counsel is outlined above. Keeping that standard in mind, we note that a prosecutor is permitted wide latitude in making argument to the jury. *Commonwealth v. Chester,* 526 Pa. 578, 587 A.2d 1367, *cert. denied* —— U.S. ——, 112 S.Ct. 422, 116 L.Ed.2d 442 (1991). Recently we have reiterated that:

> at the guilt phase, we have long held that statements to the jury are not improper unless their unavoidable effect is to prejudice the jury so that a true verdict cannot be rendered because the existence of bias and hostility makes it impossible to weigh the evidence in a neutral manner. Within these broad limitations, however, the prosecutor is free to argue that the evidence leads to guilt, and the Commonwealth can press its case with logical force and vigor. On the other hand, a prosecutor, may not indulge in personal assertions of guilt of a defendant either by direct statement or indirectly by figure of speech.

*Commonwealth v. Baker,* 531 Pa. 541, 558, 614 A.2d 663, 671 (1992) (citations omitted).

Applying these standards, we find nothing improper about the prosecutor's comments during closing arguments. The comments were not a deliberate attempt to destroy the objectivity of the fact finder, but merely summarized the evidence presented at trial with the oratorical flair allowed during argument. *See Commonwealth v. Chester,* 526 Pa. at 587, 587 A.2d at 1378. Furthermore, the prosecutor repeatedly told

the jury to put its emotions aside and to return a verdict based on the evidence and the law. Accordingly, we find that the prosecutor's comments did not have the unavoidable effect of prejudicing the jury or unduly influencing its deliberations, and we, therefore, decline to find counsel ineffective for failing to object to the remarks.

Appellant's next argument is that trial counsel was ineffective for failing to object to, or to seek the removal of, a juror based on information that she had previously been the victim of incest, a circumstance which was disclosed for the first time at the commencement of the penalty phase of trial. The prosecutor, during his penalty phase opening argument, told the jury that appellant had a significant history of prior violent crimes. He informed the jury that they would learn that appellant's history consisted of two robberies, a rape and a burglary. Shortly after the prosecutor completed his opening, the court officer asked the court to take a five minute break. The jurors were excused from the courtroom, and a discussion was held in the judge's chambers. At this time, the judge told the attorneys that the reason a break was called was because "Juror Number 2 had indicated that she was raped by her father some time ago. And when she heard the word rape or something like that, I think she was a little concerned whether she could hear or take any evidence on that." (N.T. 10/11/1989 at p. 8.) The following discussion then took place:

The Court: You are not going into any detail on that?

Prosecutor: Not unless he is, I don't think that is appropriate.

The Court: All you have to do is ask what the conviction was for and let it go at that, and I think if you do that then there is not problem. I don't see any problem but I wouldn't go into any details about the rape itself.

Prosecutor: No.

The Court: He didn't rape his daughter or anything did he?

Prosecutor: No.

504

The Court: If you want to say that the rape was—I don't know if you want to say a stranger or something like that, or just leave it go. I don't want her to think that he's raping her daughter, you know, it would be the same thing with her father raping the daughter.

Prosecutor: No.

The Court: Or you want to give the name of the woman, which will show that there's a difference.

Prosecutor: Well, first of all, it was 1971.

The Court: Okay, so that will indicate that it has nothing to do with these kids that he has now.

Prosecutor: Right.

The Court: Okay.

The Court Officer: Okay.

The Court: And just say rape and leave it go at that.

The Court Officer: We're ready.

(Discussion in chambers concluded at this time.) (Pause.)

Defense Counsel: Excuse me, judge, could I see you in the back again? With the stenographer.

The Court: We are back in chambers again.

Defense Counsel: Did she answer any of the prospective questions?

The Court: I don't know what she answered to. Whatever she answered, I don't know.

Prosecutor: I don't know.

The Court: I don't remember now what she answered to. I don't have the slightest idea. I don't know if anybody even asked her that.

Defense Counsel: Somebody asked was she the victim of a crime, though.

Prosecutor: She may not have felt that was a crime. That's incest and some people don't view it as such, particularly in days gone by. But I don't think this is the time or place to resolve that issue now in any event.

The Court: There is nothing we could do about it now. (discussion concluded).

As the record indicates, appellant's counsel did not seek to have this juror removed, object to the presence of this juror or seek to requestion the juror regarding the incident or her prejudice. On appeal, appellant, through appellate counsel, argues that he should have been granted a mistrial or that this juror should have been excused, and that trial counsel was ineffective in failing to seek either of these remedies.

As discussed above, in reviewing a claim for ineffectiveness we must first determine if the underlying claim is of arguable merit. Instantly, we find that appellant's underlying claim may be of arguable merit. Given the limited facts we have regarding this issue, we find that it is possible that the juror, either intentionally or inadvertently, failed to inform the court of the fact that her father had raped her. This failure could have worked to deprive appellant of the use of a peremptory challenge or challenge for cause of this juror. Additionally, it can be argued that because of the juror's alleged prior experience she was prejudiced against appellant, and therefore could not fulfill her duty of deciding the case solely on the evidence at trial. Thus, we agree with appellant that trial counsel should, at least have attempted to question the juror regarding the statement relayed to the court by the court officer.

Next we must determine if trial counsel's inaction had a reasonable basis designed to effectuate his client's interests. At appellant's hearing regarding his trial counsel's ineffectiveness, trial counsel was called to testify. Counsel indicated that he was concerned with having this juror on the panel. When counsel was asked why he did not object or seek to have this juror removed or requestioned, counsel said that he was troubled with the juror deciding this case, but that he did not think there was anything he could do or that the judge would allow him to do to remedy the situation. He further testified that he did not consider voir direing the juror to determine why she had not raised her hand during the initial questioning when she failed to admit to having been a victim. He stated

that "I didn't come out of there with the feeling that there was any alternative with respect to that one juror. I mean this is something that never happened to me". We find that counsel's answers demonstrate that he did not have a reasonable basis to effectuate appellant's interests. At the very least, counsel should have sought to requestion the juror to find out what, if anything, had happened to her.

That brings us to the third requirement of ineffective assistance of counsel claims. Once appellant has shown that counsel was ineffective, he must demonstrate how the ineffectiveness prejudiced him. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). A showing of ineffectiveness alone is not enough. Rather we require that along with proving that counsel was ineffective, appellant must also demonstrate that counsel's conduct had an adverse effect on the outcome of the proceedings. *Id.* This, we find, appellant has failed to prove.

At the hearing on trial counsel's ineffectiveness, appellant presented the testimony of trial counsel, and asked him why he failed to take any further action. However, appellant did not present any evidence regarding what had actually happened to Juror #2 or regarding what Juror #2 actually said had happened to her. The only evidence regarding what had happened to this juror is the statement by the trial judge relaying what he was told by the court officer. We do not know if the juror told the court officer directly that she was raped by her father, or if the court officer overheard the juror talking to another juror. Nor, obviously, do we know the precise nature of what was said. There is nothing in the record as it stands to demonstrate prejudice. All we have is a hearsay statement by the court indicating what the court officer told him about another hearsay statement allegedly made by Juror #2. The record only contains the court's third-hand summary of the court officer's second-hand account of the juror's remarks. There is no way for us to determine if the court officer correctly heard what the juror had said, and thus we cannot even be sure if Juror #2 was actually ever the victim of incest in her past. If she was the victim of incest, we

do not know why she failed to disclose the information, and whether she felt that her thought process was affected by her memories. Appellant's counsel never produced the juror to testify regarding her experience or her ability to render an impartial verdict, nor was the court officer ever called to explain what he had been told or had overheard the juror say. Appellant has simply failed to support his claim. Without any evidence to show what the juror actually said and to who, and without any evidence to show that the juror was actually the victim of a crime, we find that appellant has failed to prove that counsel's conduct had an adverse impact on his trial or to demonstrate how he was prejudiced by counsel's inaction. Appellant has the burden of proving that he was prejudiced and we find that, without any facts to support his claim, he has failed to meet his burden. Thus appellant is not entitled to relief on this claim.

Appellant's seventh argument is that trial counsel was ineffective for failing to object to both the prosecutor's cross examination of appellant, and the prosecutor's closing argument during the penalty phase of the trial. During direct examination, appellant testified that 1) he had been in the military and had received a general and honorable discharge therefrom; 2) that he was sorry for his actions which he stated were a product of his drug addiction; 3) that he had a memory loss of the entire incident up until the point where he left for South Carolina; 4) that he someday hoped to see his remaining children; and 5) that he had developed a personal relationship with God since the murders. In response to these statements, the prosecutor, on cross examination, asked several questions which appellant now asserts his trial counsel was ineffective for failing to object to. We disagree.

During its cross examination of appellant, the Commonwealth asked about his discharge from the military. The prosecutor brought out the fact that he had in fact received a general discharge because he was "unsuitable for service". The prosecutor then asked appellant if he had spent most of his time in the military in trouble. The prosecutor also asked appellant about his alleged memory loss regarding the mur-

ders. He asked about specific facts and circumstances regarding the murders, and asked exactly when his memory loss began. The prosecutor then asked if Marshall knew how his remaining children felt about him, and if he knew they could not sleep at night because they were afraid he would come in and kill them. Finally, the prosecutor questioned appellant regarding his new founded relationship with God, and asked him if he was a "spiritual guy". We find that all of this questioning was proper response to the facts brought out on direct examination. Furthermore, the questioning was directly related to the mitigating circumstances which appellant was attempting to establish. *See Commonwealth v. Abu–Jamal,* 521 Pa. 188, 555 A.2d 846, *cert. denied,* 498 U.S. 881, 111 S.Ct. 215, 112 L.Ed.2d 175 (1990). Although the tone of the prosecutor's cross examination may have been harsh at times, he was merely rebutting the suggestions made by appellant on direct examination that: 1) he was honorably discharged from the military; 2) that he had a complete memory loss of the murders due to drug consumption; 3) that he did not want to die because he wanted to spend time with his remaining children; and 4) that his new relationship with God should be considered a mitigating circumstance. As we find that all of the questioning by the prosecutor was directly related to the mitigating circumstances brought out by appellant on direct examination, trial counsel cannot be deemed ineffective for failing to object.

 Trial counsel is also not ineffective for failing to object to the prosecutor's closing argument during the penalty phase. The prosecutor, referring to Shanisha Dunbar and her manner of death stated the following:

> And do you think for a moment that she didn't cry and say don't hit me? Do you think for a minute that the first blow killed her? Or the second blow? That she didn't struggle? Did he care? Did he care then when he did that?

The prosecutor, standing next to appellant, closed his argument by stating:

> Because I am going to walk next to the defendant and stand next to the man who has blood, the blood of Shanisha

Dunbar still on his hands. Are you separated from him by the jury box. He should be separated from the world by law and fact. But for this moment I can walk over and say when you return with the appropriate verdict that all 12 of you say, that Mr. Marshall ... for what you have done you should die.

In reviewing a claim of improper comments of a prosecutor during a sentencing hearing we are reminded that:

At the penalty phase, however, where the presumption of innocence is no longer applicable, the prosecutor is entitled to "present argument for or against the sentence of death" and may employ oratorical license and impassioned argument, including a statement that appellant showed no sympathy or mercy to his victims.

*Commonwealth v. Baker*, 531 Pa. at 558, 614 A.2d at 671. (citations omitted).

According to these standards, we find nothing improper about the prosecutor's penalty phase arguments. The statements did not arouse the jury's emotions to such a degree that it became impossible to impose a sentence based on relevant evidence according to the standards of the death penalty statute. *Commonwealth v. Duffey*, 519 Pa. 348, 548 A.2d 1178 (1988). Additionally, at the post verdict hearings, trial counsel testified that he did not object to the arguments because he did not feel that they were improper. In light of the fact that trial counsel had a reasonable basis for not objecting, and because we do not find that the comments were improper, we refuse to find counsel ineffective for failing to object.

 Appellant's next argument is that his trial counsel rendered ineffective assistance of counsel during his own summation to the jury during the penalty phase of the trial. During his closing, trial counsel stated the following:

Certainly if it was my sister or my niece, I'd want him to fry too. I'd be one of the first people to want to pass out the barbecue sauce and soak him down a little bit. But you've got to remove yourself from the emotions of that family and you have to look at the fact that there are two other children that belong to Donna and Jerry Marshall. They

haven't been here, they haven't had a say in these proceedings.

During the PCRA hearing, trial counsel explained that he sought, by this statement, to convince the jury that vengeance is the province of God, not of human beings and that they should show some degree of mercy. Given the gruesome details of the crimes involved, trial counsel chose not to ignore the issues, but rather, as the trial court stated, diffuse the normal sense of vengeance that the jury was feeling. Accordingly, since trial counsel had a reasonable basis for his argument, he cannot be found ineffective. *Commonwealth v. Basemore,* 525 Pa. at 531, 582 A.2d at 870.

 Finally, appellant argues that the trial court erred in its instruction on mitigating circumstances and that trial counsel was ineffective for failing to object to the same. During the penalty phase of the trial, the trial court instructed the jury as follows:

> The Sentencing Code provides that the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstance, or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances. The verdict must be a sentence of life imprisonment in all other cases.

Appellant argues that this instruction improperly instructed the jury that it could not consider any of the mitigating circumstances unless it unanimously found them to exist. We disagree. The instruction given by the trial judge followed the death penalty statute and the Sentencing Code. We have previously examined this exact instruction and found it to be constitutional and proper. *Commonwealth v. O'Shea,* 523 Pa. 384, 567 A.2d 1023, *cert. denied,* 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 180 (1990), and *Commonwealth v. Frey,* 504 Pa. 428, 475 A.2d 700, *cert. denied,* 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984). Accordingly, trial counsel will not be deemed to be ineffective for failing to object.

 Finally, in compliance with our statutory duty pursuant to 42 Pa.C.S. section 9711(h)(3) we must affirm the sen-

tences of death unless we determine that the sentence was the product of passion, prejudice or any other arbitrary factor; the evidence fails to support the finding of at least one aggravating factor; or the sentence is excessive or disproportionate to the penalty imposed in similar cases. We have reviewed the sentences imposed upon Marshall and perceive no excess or disproportionality in the sentences imposed when compared to the sentences imposed in similar cases. The record does not provide any grounds for us to find that the sentences of death were the product of "passion, prejudice or any other arbitrary factor." *See* 42 Pa.C.S. § 9711(h)(3)(i). Finally, the evidence supports the finding of at least one aggravating circumstance specified in 42 Pa.C.S.A. Section 9711(d). We find that the sentences of death in this case comply with the concerns in the statute, and, accordingly, the sentences must be affirmed.[1]

Judgment affirmed.

LARSEN, J., did not participate in the decision of this case.

---

1. The Prothonotary is directed to transmit a full and complete record of the trial, sentencing hearing, imposition of sentence, and review by this Court to the Governor. 42 Pa.C.S.A. Section 9711(i).