J-A26014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| ROBERT CONVERY, JR. | |
| Appellant | No. 245 MDA 2017 |

Appeal from the Judgment of Sentence January 4, 2017
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0005271-2015

BEFORE:  BOWES, OLSON, AND RANSOM, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED FEBRUARY 15, 2018**

Robert Convery, Jr. appeals from his January 4, 2017 judgment of sentence imposing an aggregate term of thirteen and one-half to thirty years imprisonment after he was convicted of three counts each of involuntary deviate sexual intercourse ("IDSI") and sexual assault.  We affirm.

The trial court succinctly summarized the facts and procedural history as follows:

> Between 2013 and 2015 Appellant and his two victims, T.M. and A.J., were students at Albright College.  [N.T.], June 14-15, 2016, at 32, 33, 149, 205. All three individuals were "brothers" of the Pi Kappa Phi fraternity. *Id*. at 33, 149, 206. Prior to the events that precipitated this case, all three men were friends. *Id*. at 84, 152, 208. Throughout the events in question, Appellant and A.J. shared various residences in the City of Reading. *Id*. at 206.

On the evening of December 6, 2013 and stretching into the next day, T.M. was partying at Appellant's residence. *Id*. at 40. During the course of the evening, T.M. became intoxicated and fell asleep on a couch. *Id*. at 42. When T.M. awoke, he discovered that he was in Appellant's bedroom, his pants were off, and Appellant was performing oral sex on him. *Id*. at 44. Shocked by the assault, T.M. fled the residence. *Id*. at 47. Later, Appellant apologized by text message for the assault, however this message was not preserved by the victim. *Id*. at 48. At that time, T.M. did not report the assault out of fear of public humiliation and a desire to forget the incident. *Id*. at 49-51. After the assault, T.M. permitted life to return to normal and forgave Appellant. *Id*. at 56.

During the following year, Appellant and A.J. moved to a new residence on 1610 [North] 11th Street in the City of Reading. Then, on or around November 22, 2014, an almost identical pattern of assault occurred. *Id*. at 52-53. Similar to the precipitating events of the first assault, T.M. became intoxicated after a night of clubbing. *Id*. T.M. returned to Appellant's new residence and was hanging out in Appellant's room with several other people. *Id*. at 55. Overcome by either tiredness or intoxication, T.M. fell asleep in Appellant's bed. *Id*. at 56-57. When T.M. awoke he found that his pants were partially removed and Appellant was performing oral sex on him again. *Id*. at 57. T.M. fled to his own residence after the assault. *Id*. at 58-59. Like after the previous assault, Appellant attempted to apologize for his actions using text messages. *Id*. at 61-64. In these messages he also affirmed the existence of a previous assault. *Id*. (Appendix A). Though T.M. did not immediately report the assault, he preserved the text messages.

The final assault occurred on February 8, 2015 to A.J. *Id*. at 153-54. Like the prior two assaults, the victim was intoxicated and fell asleep at a party. *Id*. at 155. Also like in the prior assaults, A.J. awoke to Appellant performing oral sex on him. *Id*. at 157-58. A.J. was not conscious at the time of the assault and did not give his consent. *Id*. at 157, 163. After he awoke, A.J. left the room and went into a friend's room. *Id*. at 158. Following the assault, Appellant pled by text message for A.J. to forgive him. *Id*. at 159. These messages were deleted by A.J. as he wished to "wipe [himself] clean [of] the situation." *Id*. at 160.

After the third assault, on February 23, 2015, T.M. reported the assaults made against his person to Albright's Public Safety Officer. *Id*. at 67, 125. A.J., after consulting with T.M., also decided to come forward and report the assault perpetrated against him. Both parties filed reports with the Public Safety Officer. *Id*. at 125, 162. At T.M.'s request, the matter was then referred to local authorities. *Id*. at 69.

At trial, Appellant took the stand in his own defense. Appellant represented that all three events were consensual. However, the jury determined that most of his testimony was mendacious[.] During his testimony, Appellant stated his level of inebriation at all three assaultive events. At the time of the first event he stated that though he was intoxicated he was functioning and understood what was going on. *Id*. at 211. At the time of the second event, Appellant testified that he knew what he was doing. *Id*. at 223. On the instance of the third event, Appellant again testified that though he had been drinking he was able to function. *Id*. at 230-31. Appellant never testified that inebriation played a role in his decision to assault the victims. The record is devoid of any other evidence that Appellant was significantly intoxicated[.]

Trial Court Opinion, 4/21/17, at 2-4.

The jury convicted Appellant of three counts of IDSI and three counts of sexual assault. Following its assessment, the Pennsylvania Sexual Offender Assessment Board ("SOAB") recommended that Appellant be classified as a sexually violent predator ("SVP"). However, the trial court rejected SOAB's determination and concluded that Appellant did not meet the criteria of SVP classification. On January 4, 2017, the trial court imposed an aggregate sentence of thirteen and one-half to thirty years imprisonment. Specifically, for each of the three ISDI convictions, the trial court imposed four and one-half to ten years imprisonment. It found that

the sexual assaults merged for the purpose of sentencing. This timely appeal followed the denial of Appellant's post-sentence motion seeking reconsideration of his sentence.

Appellant complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The Rule 1925(b) statement raised three issues, which he consolidated on appeal as follows:

> Is Appellant entitled to a vacating of sentence and a new hearing because the trial court (1) sentenced based upon a mistaken fact; (2) imposed a sentence beyond that sought by the prosecution with no basis under the sentencing code; and (3) sentenced appellant to 4.5 times the length of a pre-trial plea offer, thereby punishing him for exercising his Constitutional right to stand trial?

Appellant's brief at 5.

As we observed in **Commonwealth v. McLaine**, 150 A.3d 70, 76 (Pa.Super. 2016) (cleaned up), "an appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right." Instead, to invoke our jurisdiction involving a challenge to the discretionary aspects of a sentence, an appellant must satisfy the following four-part test:

> (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Id**.

- 4 -

Instantly, Appellant filed a timely appeal, and preserved his contentions in a post-sentence motion for reconsideration of sentence. Additionally, Appellant's Pa.R.A.P. 2119(f) statement raises three issues: 1) the trial court made factual errors by failing to consider his intoxication when focusing on the intentionality of his conduct; 2) the court failed to explain its reasons for imposing consecutive sentences that exceeded the Commonwealth's recommendation of eleven to twenty-two years imprisonment; and 3) the imposition of a sentence that dwarfed the Commonwealth's pretrial plea offer of three years imprisonment with RRRI and boot camp eligibility was tantamount to a penalty for exercising his right to trial. All three allegations can be deemed to present substantial questions. *See Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa.Super. 2004) ("claim that the trial court relied upon incorrect factual assertions when imposing sentence asserts a 'substantial question.'"); *Commonwealth v. Simpson*, 829 A.2d 334, 338 (Pa.Super. 2003) (trial court's failure to articulate sufficient reasons for the sentence imposed may raises a substantial question); and *Commonwealth v. Bethea*, 379 A.2d 102, 105 (Pa. 1977) ("it is constitutionally impermissible for a trial court to impose a more severe sentence because a defendant has chosen to stand trial rather than plead guilty.").

In **McLaine**, **supra**, this Court reiterated the relevant legal framework when addressing the merits of a challenge to the discretionary aspect of sentencing.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
>
> When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

**McLaine**, **supra** at 75–76.

In **Commonwealth v. Walls**, 926 A.2d 957 (Pa. 2007), our Supreme Court noted that this Court's ability to review a sentence is constrained by 42 Pa.C.S. § 9781(c). That statute provides that we can vacate a sentence and remand for re-sentencing only if we find: 1) that the court intended to sentence within the guidelines but "applied the guidelines erroneously;" 2) a sentence was imposed within the guidelines "but the case involves circumstances where the application of the guidelines would be clearly unreasonable;" or 3) "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S. § 9781(c). "In all

other cases the appellate court shall affirm the sentence imposed by the sentencing court." *Id*.

As the trial court imposed three consecutive standard range sentences for IDSI, we can reverse only if the trial court's application of the guidelines was clearly unreasonable. The *Walls* Court described unreasonable as follows: "'unreasonable' commonly connotes a decision that is 'irrational' or not guided by sound judgment." *Id*. at 963.

After a thorough review of the certified record, the parties' briefs and the pertinent law, we affirm the judgment of sentence on the basis of the cogent and well-reasoned opinion entered on April 21, 2017, by the distinguished President Judge Paul M. Yatron. Specifically, President Judge Yatron observed that the record does not support Appellant's claim that inebriation played a role in his decision to assault the victims on three separate occasions, particularly in light of Appellant's testimony that he was functional and understood his behavior. As to the Commonwealth's sentencing recommendation, President Judge Yatron highlighted that he was not obligated to follow the Commonwealth's suggestion and that his decision to impose consecutive standard range sentences was reasonable in light of the fact that the three individual crimes occurred separately over a fourteen-month period and warranted three distinct terms of incarceration. Finally, the esteemed jurist emphasized that, since he was not aware that Appellant had rejected the Commonwealth's generous pretrial offer when he fashioned

Appellant's aggregate sentence, the record belies Appellant's argument that he was penalized for exercising his right to trial. As to all of the foregoing points, we adopt President Judge Yatron's reasoning as our own.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/15/2018

COMMONWEALTH OF        :   IN THE COURT OF COMMON PLEAS
PENNSYLVANIA                  :   OF BERKS COUNTY, PENNSYLVANIA
                                    :   CRIMINAL DIVISION
                                    :

           v.                       :

                                    :   No. CP-06-CR-0005271-2015
ROBERT CONVERY, JR.,         :
APPELLANT                :   PAUL M. YATRON, PRESIDENT JUDGE

**1925(a) Opinion**                                              **April 21, 2017**

## PROCEDURAL HISTORY

On June 15, 2016, Robert Convery, Jr. ("Appellant") was convicted of three counts of involuntary deviate sexual intercourse ("IDSI") and three counts of sexual assault. As pursuant to the Commonwealth's procedure with sexual offenses, sentencing was deferred until the Pennsylvania Sexual Offender Assessment Board ("the Board") could evaluate Appellant. The Board recommended that Appellant be classified as a sexually violent predator. However, on January 4, 2017, we determined that Appellant did not meet the criteria to be classified as a sexually violent predator. TRANSCRIPT OF PROCEEDINGS, January 4, 2017, at 13 [hereinafter T. P.] (*see* footnote 1 on page 6, *infra*).

Immediately following this determination we proceeded to sentencing. The Commonwealth recommended that we impose two periods of incarceration, each lasting 5 ½ to 11 years, followed by 20 years of special probation. T. P. at 14-15. Ultimately, we sentenced Appellant to three consecutive periods of incarceration, each term lasting 4 ½ to 10 years for a total term of 13 ½ to 30 years.

After sentencing, Appellant filed a timely post sentence motion on January 14, 2017, which we denied. Appellant then filed an appeal on January 14, 2017. Subsequently, Appellant filed a concise statement of errors pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure.

Appellant raises the following matters for review:

The court abused its discretion and sentenced based upon an erroneous determination of fact when the Court explained the severity of the sentence and the imposition of consecutive sentences by focusing on what it described as the intentional nature of the conduct, particularly in light of its reoccurrence with one of the two complainants. The evidence at trial, in the light of the most favorable to the Commonwealth, made clear that

1

all three incidents occurred at times when the parties were severely inebriated. The intentionality of conduct here was not reflective of a premeditated plan or a predatory character but was an intentional act brought on by a high level of intoxication, and thus not deserving of as severe a sanction as that due to one who, with full control of his facilities, persevered in conduct such as this in a premeditated manner.

In the imposition of three (3) consecutive terms of imprisonment the trial court abused [its] discretion in a case where even the prosecution sought only two (2) terms of imprisonment (totaling 11 years as a minimum) followed by a probationary sentence. No factor found by the Court warranted a sentence in excess of that sort by the prosecutor. The imposition of 3 consecutive terms of imprisonment, especially in light of the prosecution recommendation and the factors to be considered at sentencing - that "the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant," 42 Pa. Cons. Stat. Ann. § 9721 - was an abuse of discretion.

The sentence as imposed constitutes an abuse of discretion in a case in which the plea offer was for a minimum of three (3) years imprisonment with RRRI and boot camp eligibility. Imposing a sentence in which the minimum term was 4.5 times greater than the plea offer, in a case in which there was no evidence adduced at trial that was not known at the time of the plea offer, is an abuse of discretion as it clearly adds nothing to the public safety and the retributive goals of sentencing and becomes instead a punishment for exercising the right to trial.

CONCISE STATEMENT, March 27, 2017.

## FACTUAL BACKGROUND

Between 2013 and 2015 Appellant and his two victims, T. M. and A. J., were students at Albright College. JURY TRIAL, June 14-15, 2016, at 32, 33, 149, 205. All three individuals were "brothers" of the Pi Kappa Phi fraternity. *Id.* at 33, 149, 206. Prior to the events that precipitated this case, all three men were friends. *Id.* at 84, 152, 208. Throughout the events in question, Appellant and A. J. shared various residences in the City of Reading. *Id.* at 206.

On the evening of December 6, 2013 and stretching into the next day, T. M. was partying at Appellant's residence. *Id.* at 40. During the course of the evening, T. M. became intoxicated and fell asleep on a couch. *Id.* at 42. When T. M. awoke, he discovered that he was in Appellant's bedroom, his pants were off, and Appellant was performing oral sex on him. *Id.* at 44. Shocked by the assault, T. M. fled the residence. *Id.* at 47. Later, Appellant apologized by text message for the assault, however this message was not preserved by the victim. *Id.* at 48. At

2

that time, T. M. did not report the assault out of fear of public humiliation and a desire to forget the incident. *Id.* at 49-51. After the assault, T. M. permitted life to return to normal and forgave Appellant. *Id.* at 56.

During the following year, Appellant and A. J. moved to a new residence on 1610 M. 11ᵗʰ Street in the City of Reading. Then, on or around November 22, 2014, an almost identical pattern of assault occurred. *Id.* at 52-53. Similar to the precipitating events of the first assault, T. M. became intoxicated after a night of clubbing. *Id.* T. M. returned to Appellant's new residence and was hanging out in Appellant's room with several other people. *Id.* at 55. Overcome by either tiredness or intoxication, T. M. fell asleep in Appellant's bed. *Id.* at 56-57. When T. M. awoke he found that his pants were partially removed and Appellant was performing oral sex on him again. *Id.* at 57. T. M. fled to his own residence after the assault. *Id.* at 58-59. Like after the previous assault, Appellant attempted to apologize for his actions using text messages. *Id.* at 61-64. In these messages he also affirmed the existence of a previous assault. *Id.* (Appendix A). Though T. M. did not immediately report the assault, he preserved the text messages.

The final assault occurred on February 8, 2015 to A. J.. *Id.* at 153-54. Like the prior two assaults, the victim was intoxicated and fell asleep at a party. *Id.* at 155. Also like in the prior assaults, A. J. awoke to Appellant performing oral sex on him. *Id.* at 157-58. A. J. was not conscious at the time of the assault and did not give his consent. *Id.* at 157, 163. After he awoke, A. J. left the room and went into a friend's room. *Id.* at 158. Following the assault, Appellant pled by text message for A. J. to forgive him. *Id.* at 159. These messages were deleted by A. J. as he wished to "wipe [himself] clean [of] the situation." *Id.* at 160.

After the third assault, on February 23, 2015, T. M. reported the assaults made against his person to Albright's Public Safety Officer. *Id.* at 67, 125. A. J., after consulting with T. M., also decided to come forward and report the assault perpetrated against him. Both parties filed reports with the Public Safety Officer. *Id.* at 125, 162. At T. M.'s request, the matter was then referred to local authorities. *Id.* at 69.

At trial, Appellant took the stand in his own defense. Appellant represented that all three events were consensual. However, the jury determined that most of his testimony was mendacious; we must do the same. During his testimony, Appellant stated his level of inebriation at all three assaultive events. At the time of the first event he stated that though he was intoxicated he was functioning and understood what was going on. *Id.* at 211. At the time of the

3

second event, Appellant testified that he knew what he was doing. *Id.* at 223. On the instance of the third event, Appellant again testified that though he had been drinking he was able to function. *Id.* at 230-31. Appellant never testified that inebriation played a role in his decision to assault the victims. The record is devoid of any other evidence that Appellant was significantly intoxicated, and we reject this contention.

## DISCUSSION

### I. General Standard for error and abuse of discretion.

In all Appellant's claims, he alleges that the Court abused its discretion. When reviewing an abuse of discretion claim, the Appellate Court must consider that "[s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Booze*, 953 A.2d 1263, 1278 (Pa. Super. 2008). Abuse of discretion is more than an error in judgment; rather, the appellant must establish that the sentencing court either "ignored or misapplied the law[;] exercised its judgment for reasons of partiality, prejudice, bias or ill will[;] or arrived at a manifestly unreasonable decision." *Id.* A sentence should not be disturbed when it is evident that the sentencing court was aware of the sentencing considerations and weighed the considerations in a meaningful fashion. *Commonwealth v. Devers*, 546 A.2d 12 (Pa. 1988).

### II. The Court did not consider an impermissible factor.

Appellant alleges that the Court considered an erroneous factor in sentencing. He argues that we misconstrued the intentional and predatory aspects of Appellant's assaultive behavior. Essentially claiming that the Court sentenced Appellant believing that his behavior was premediated and predatory, this, according to Appellant, is not substantiated by the record.

Courts are only permitted to consider information found within the record during sentencing, as the *Karash* court explained:

> A sentence is invalid if the record discloses that the sentencing court may have relied in whole or in part upon an impermissible consideration. This is so because the court violates the defendant's right of due process if, in deciding upon the sentence, it considers unreliable information or information affecting the court's impartiality, or information that it is otherwise unfair to hold against the defendant.

*Commonwealth v. Karash*, 452 A.2d 528, 528 (Pa. Super. 1982).

4

The trial judge in *Karash* revealed at sentencing that he was relying on other crimes allegedly committed by the defendant:

> I've also taken into consideration the crimes [escape] you have committed in Pennsylvania since the time that you returned here . . . . The Court feels, while I'm not sentencing you for those crimes, they have been part of the Court's consideration in imposing this sentence . . . .

*Id.* at 529.

At a subsequent hearing on a motion to modify sentence, the *Karash* trial judge elaborated:

> Okay. So the record reflects, I don't know whether it's in there or not, but the matter of Mr. Karash's [escape] incident was on all of the local television channels and in all the local newspapers. It was the only source of the Court's information, and actually showed pictures of Mr. Karash being apprehended in handcuffs at the scene, and the Court was aware that he was supposed to be in jail awaiting sentence and not to be out.

*Id.*

The trial court had relied upon impermissible information when it considered the defendant's escape incident and the television reports. This sentence was therefore vacated. *Id.* However, the instant sentencing hearing is not like that in *Karash*. We exclusively relied upon the record when deciding Appellant's sentence.

Instantly, Appellant concedes that his actions were intentional, but not that his actions were premeditated. CONCISE STATEMENT, March 27, 2017.Though such contrasts could possibly be drawn in a definitional sense, in this Commonwealth premeditation bears only a tangential relationship to intentionality. To understand this concept, the Court must initially scrutinize the only area of the law where intentionality and premeditation are both relevant; first degree murder.

5

Under Pennsylvania law, first degree murder is defined as "[a] criminal homicide . . . when it is committed by an intentional killing." 18 Pa.C.S. § 2502. The statutory language lacks any mention of premeditation.[1] However, jurisprudentially,

> to sustain a conviction for first-degree murder, the Commonwealth must prove that the defendant acted with the specific intent to kill, that a human being was unlawfully killed, that the accused did the killing and that the killing was done with deliberation. It is the specific intent to kill which distinguishes murder in the first degree from lesser grades of murder.

*Commonwealth v. Simpson*, 754 A.2d 1264, 1269 (Pa. 2000) (internal citations omitted); *see Commonwealth v. Fletcher*, 861 A.2d 898, 907 (Pa. 2004).

One defense to first degree murder is voluntary intoxication. 18 Pa.C.S. § 308. To make this defense the defendant "must show that [he] was unable to form the specific intent to kill because he was so overwhelmed or overpowered by drugs to the point of losing his faculties at the time the crime was committed." *Fletcher*, 861 A.2d 898, 908 (Pa. 2004) (citing *Marshall*, 633 A.2d 1100, 1104–05 (Pa. 1993)). Relevant here is the fact that intoxication negates specific intent, not premeditation.

Contrary to the normal voluntary intoxication defense, Appellant argues that "intentionality of conduct here was not reflective of a premeditated plan . . . but was an intentional act brought on by a high level of intoxication[.]"CONCISE STATEMENT, March 27, 2017. In summation, he argues that intoxication negates premeditation. However, we reiterate, intoxication is not a defense to premeditation. Jurisprudentially, intoxication serves as a defense to negate the general mens rae requirement of first degree murder, intentionality. *Commonwealth v. Miller*, 897 A.2d 1281, 1285 (Pa. Super. 2006) (finding sufficient intoxication downgrades the homicide to third degree murder, but does not exonerate the defendant). As intoxication cannot negate premeditation, intoxication bears no relationship to a premeditative plan. Therefore, the Court was free to consider that Appellant was both intoxicated and that his acts were premediated.

---

[1] Several states include premeditation in their statutory language for first degree murder. For example, Maryland defines first degree murder as "a deliberate, premeditated, and willful killing . . ." Md. Code Ann. Homicide, § 2-201. Virginia similarly defines first degree murder as ". . . any willful, deliberate, and premeditated killing . . . ." Va. Code Ann. § 18.2-32. Though in other states, such as New York, premeditation is not an element of the statute. N.Y. Penal Law § 125.27.

Even if intoxication could negate premeditation, Appellant's admissions defeat his ability to use this defense. Instantly, Appellant argues that he was intoxicated, but he concedes that his acts were intentional. By conceding that the acts were intentional, he has also conceded that he was not "so overwhelmed or overpowered by [alcohol] to the point of losing his faculties at the time the crime was committed." *Fletcher*, 861 A.2d 898, 908. It follows, that since Appellant was not so overwhelmed or overpowered by alcohol to be incapable of acting intentionally, he was also not so overwhelmed or overpowered by alcohol to have a premeditated plan. A finding contrary to this point would be illogical. As such, the Court must conclude that Appellant was sufficiently sober to capable of premeditating his assaults. Given the evidentiary standard, therefore, Appellant premeditated his acts and a consideration of premeditation was permissible.

Moreover, the Court was free to conclude that Appellant was not intoxicated. Despite the averments made by counsel, Appellant testified to his state of mind and his lack of severe inebriation. While Appellant alleged some level inebriation, he repeatedly stated that his level of inebriation was not so much that he did not know what he was doing. If Appellant's testimony is discounted because of obvious credibility issues, the record does not otherwise reflect that Appellant was intoxicated. In light of the evidence most favorable to the Commonwealth, Appellant was not significantly inebriated during any of the assaults. Additionally, the fact that the same victim was assaulted on two temporally distinct occasions is certainly probative in demonstrating premeditated actions, as they establish a course of conduct. As such, the Court would have been permitted to find that Appellant's actions were premediated.

Additionally, Appellant argues that we impermissibly considered that his acts were predatory. The record supports such a finding and therefore this consideration was permissible. The record indicates that Appellant targeted two intoxicated individuals on three temporally distinct occasions over a period of several months. Clearly, the evidence demonstrates that Appellant had a modus operandi to target intoxicated individuals with a diminished ability to resist. Such actions are by their very nature predatory.[2] Additionally, Appellant's expert acknowledges that Appellant's acts were predatory because he "promoted, established, or

---

[2] Despite the Court finding that Appellant's acts were predatory, he did not meet the criteria to be classified as a sexually violent predator. Our decision relied solely upon the determination that the Commonwealth failed to prove that Appellant has a mental abnormality. T. P. at 12.

7

facilitated [the sexual conduct] in whole or in part." T. P. at 6, 9. Therefore, it was clearly permissible for the Court to consider Appellant's acts as predatory.

As such, none of the Court's considerations were impermissible and our sentencing should stand.

### III. The Court adequately considered the sentencing guidelines, even though we did not follow the prosecutor's recommendations.

Appellate alleges that the Court abused its discretion when we failed to follow the sentencing guidelines by imposing consecutive guidelines in excess of that sought by the prosecutor. In fact, this statement contains two separate issues. First, whether the Court abused its discretion by not acquiescing to the will of the prosecutor during sentencing. Second, whether the Court abused its discretion when sentencing Appellant to consecutive terms.

First, we find that there is no requirement that we follow the will of prosecutor. A court has broad discretion in sentencing, but is restrained in that it must consider the sentencing guidelines. *See Commonwealth v. Yuhasz*, 923 A.2d 1111, 1117 (Pa. 2007). The sentencing guidelines provide that a court shall consider:

> . . . [T]he protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing and taking effect under section 2155 (relating to publication of guidelines for sentencing, resentencing and parole and recommitment ranges following revocation).

42 Pa.C.S. § 9721. "The only line that a sentence may not cross is the statutory maximum sentence." *See Yuhasz*, 923 A.2d at 1119.

Instantly, the Court considered the prosecutor's recommendation during sentencing. After consideration, we rejected this recommendation. Instead, we considered all the factors relevant to sentencing and decided a period of longer incarceration was necessary. Primarily, as is our practice, we stated the following rationale for the sentence imposed:

> [We've have taken into] account the provisions of the sentencing guidelines. [We] have taken into account the fact the defendant has no prior record. And while that is, to some extent, built into the guidelines anyway by virtue of the component known as the prior record score, I believe that counsel agreed that the standard range of the guidelines here is 48 to 66 months . . . . T. P. at 59.
>
> . . . [we] have taken into account the recommendations made by the Commonwealth. We've taken into account the recommendation made by the defense. [We've] taken into

8

account the defendant's allocution and expression of remorse, brief as it was. And [we've] taken into account also the testimony of the witnesses that appeared here on the defense's behalf, all of which I believe had submitted letters in the package that I had previously reviewed, and their testimony was certainly consistent with what they had written. T. P. at 59-60.

[We've] taken into account the provisions of the judicial code with respect to sentencing and the factors that I must take into account. I have reviewed a presentence investigation, which was prepared in this matter. T. P. at 60.

The Court also considered several findings specific to the case. We took into account that Appellant was found not to be a Sexually Violent Predator. T. P. at 60. We also considered a positive letter from pretrial services, Appellant's life achievements, the many letters and testimony in support of Defendant, and, more generally, Appellant's positive qualities. T. P. at 57-58. Furthermore, we considered the suffering of Appellant's victims and his mendacity at trial. T. P. at 57, 58. Most critically, in concluding our analysis, we considered the seriousness of the offenses. To this effect we stated:

[We've] also taken into account the seriousness of these offenses in the eyes of the public, as well, given the fact that they are characterized or classified as felonies of the first degree. T. P. at 60.

After reviewing all these factors, we sentenced Appellant. The sentence imposed was not made in haste or without significant consideration of the sentencing guidelines. As such, the sentence imposed was not an abuse of discretion, even though it exceeded the prosecutor's recommendations.

Second, considering Appellant's challenge to being consecutively sentenced on three counts, consecutive sentences are subject to a review for abuse of discretion only when a substantial question is raised; that is, when on its face, the "sentence [is] excessive level in light of the criminal conduct at issue in the case[.]" *Commonwealth v. Mastromarino*, 2 A.3d 581, 587 (Pa. Super. 2010). The Superior Court has considered sentencing to merit review when the court disregards the relevant sentencing criteria, the circumstances of the offense, and the rehabilitative needs of the defendant. *Commonwealth v. Dodge*, 77 A.3d 1263, 1273 (Pa. Super. 2013) (citations omitted). However, generally the imposition of consecutive sentences, opposed to concurrent sentences, does not alone raise a substantial question. *Commonwealth v. Gonzalez-Dejusus*, 994 A.2d 595, 598 (Pa. Super. 2010).

9

Instantly, the fact that there were three separate assaults was the basis for three different terms of incarceration. T. P. at 58-59. Also, each assault occurred after significant period of time. After considering all relevant factors, elaborated *supra*, we found that it would diminish the seriousness of his acts if Appellant did not receive a period of incarceration for each of his assaults. T. P. at 60. As such, Appellant was sentenced appropriately and we did not abuse our discretion.

IV.     **The Court did not consider the terms of a plea negotiation, as it was not party to this discussion. Any argument asserted under such a premise is without merit.**

Appellant asserts that the Court abused its discretion by imposing a sentence significantly in excess of the generous plea deal offered by the Assistant District Attorney prior to trial.

First, the Court was unaware of the generous terms of the Commonwealth's offer. We observe, as we did at sentencing; however, that the usual practice of the Berks County District Attorney's Office is to make what may be considered to be lenient offers in an attempt to spare victims the ordeal of trial. T. P. at 56. The Court may bind itself to these offers only when a plea is tendered, and, accepted by the Court. Such was not the case here. Once Appellant went to trial, sparing his victims further suffering was no longer a possible mitigating circumstance.

Second, through his argument, Appellant heavily implies that he was punished for going to trial. However, "no one is penalized for exercising that right in [our] Courtroom." T. P. at 50. They may however be penalized if they testify mendaciously at trial. T. P. at 57. Instantly, we found that Appellant's testimony was clearly false, as evinced by the jury's verdict. T. P. at 57. Therefore, the fact he lied at trial was taken into consideration during sentencing.

Moreover, for the reasons stated above, we adequately considered the relevant guidelines and provisions of the sentencing code. There is no precedent that we are aware of that reduces the Court's sentencing discretion to a specific multiple of the offered plea deal. Therefore, this argument is without merit.

## CONCLUSION

For all of the foregoing reasons, this Court respectfully requests that the instant appeal be **DENIED.**

10