J-S70005-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DANIEL CHAVIOUS | : | |
| | : | |
| Appellant | : | No. 623 MDA 2017 |

Appeal from the PCRA Order March 20, 2017
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s):  CP-22-CR-0002415-2009

BEFORE:  GANTMAN, P.J., SHOGAN, J., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED DECEMBER 01, 2017**

Appellant, Daniel Chavious, appeals from the order entered in the Dauphin County Court of Common Pleas, which denied his first petition brought pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

In its opinions, the PCRA court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.  We add that the PCRA court dismissed Appellant's PCRA petition on March 20, 2017.  On April 6, 2017, Appellant timely filed a notice of appeal.  The PCRA court ordered Appellant on April 11, 2017, to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P.

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

1925(b).  Appellant filed a Rule 1925(b) statement on May 8, 2017.[2]

Appellant raises the following issues for our review:

WHETHER TRIAL COUNSEL WAS INEFFECTIVE IN HER REPRESENTATION?

WHETHER THERE WAS MISCONDUCT BY THE COMMONWEALTH WHEN A COURT ORDER WAS IGNORED AND RELEVANT EVIDENCE WAS DESTROYED?

(Appellant's Brief at 5).

Our standard of review of the denial of a PCRA petition is limited to examining whether the record supports the court's determination and whether the court's decision is free of legal error.  **Commonwealth v. Ford**, 947 A.2d 1251 (Pa.Super. 2008), *appeal denied*, 598 Pa. 779, 959 A.2d 319 (2008).  This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings.  **Commonwealth v. Boyd**, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007).  Credibility determinations are within the province of the PCRA court when a hearing is held on the matter.  **Commonwealth v. Rathfon**, 899 A.2d 365 (Pa.Super. 2006).  If the record supports a PCRA

---

[2] Appellant's Rule 1925(b) statement appears to have been untimely filed. Nevertheless, this Court may address the merits of a **criminal** appeal, where a defendant files an untimely Rule 1925(b) statement, if the trial court had adequate opportunity and chose to prepare an opinion addressing the issue(s) raised on appeal.  Here, the PCRA court issued opinions addressing Appellant's complaints.  Therefore, we decline to consider Appellant's issues waived.  **See Commonwealth v. Burton**, 973 A.2d 428 (Pa.Super. 2008) (*en banc*) (allowing for immediate review under these circumstances).

court's credibility determination, it is binding on the appellate court. ***Commonwealth v. Dennis***, 609 Pa. 442, 17 A.3d 297 (2011).

A defendant is constitutionally guaranteed access to evidence that is either materially exculpatory or potentially useful. ***Commonwealth v. Chamberlain***, 612 Pa. 107, 30 A.3d 381 (2011). When the Commonwealth fails to preserve "potentially useful" evidence, as opposed to materially exculpatory evidence, no due process violation occurs unless the defendant can prove the Commonwealth acted in bad faith. ***Id.*** "Potentially useful evidence is that of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." ***Id.*** at 143, 30 A.3d at 402.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable Richard A. Lewis, we conclude Appellant's issues merit no relief. The PCRA court opinions comprehensively discuss and properly dispose of the questions presented. (***See*** PCRA Court Opinion, filed May 10, 2017, at 1; PCRA Court Opinion, filed March 20, 2017, at 10-16) (finding: **(1)** at PCRA hearing on July 29, 2013, trial counsel testified that she recalled Appellant asking her more than once to obtain phone records; trial counsel stated she had no reasonable basis for failing to secure phone records; thus, Appellant established second prong of ineffectiveness test; Appellant, however, was unable to establish what was contained in records at issue or whether

phones or phone records would have likely changed outcome of his trial had counsel obtained and been able to introduced them as evidence, because phones and phone records had been destroyed; thus, Appellant failed to satisfy arguable merit and prejudice prongs of ineffectiveness test; **(2)** testimony during PCRA hearing on January 23, 2017, regarding destruction of phones at issue, did not support adverse inference against Commonwealth; Dauphin County evidence coordinator, Charles A. Acre, testified that Commonwealth did not direct him to destroy phones and he was unaware of any other order pertaining to phones; Mr. Acre also stated he received no orders or notifications directing him to retain phones; Mr. Acre testified that Dauphin County's regular practice was to destroy evidence after it remained unrequested in storage for several years and that destruction occurs regularly on particular dates; timing of destruction of evidence was unfortunately done in regular course of conduct, but no evidence indicated destruction was done in bad faith; therefore, Appellant was not entitled to relief merely because evidence at issue had been destroyed).  Accordingly, we affirm on the basis of the PCRA court's opinions.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/1/2017</u>

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
: DAUPHIN COUNTY, PENNSYLVANIA
:
:
vs. : NO. 2415 CR 2009 (624 MDA 2017)
:
: PCRA - APPEAL
DANIEL CHAVIOUS, :
Defendant :

## STATEMENT IN LIEU OF MEMORANDUM OPINION

AND NOW, this __10__ day of May, 2017, this Court notes that, for purposes of

appellate review, the reasons for dismissing Defendant's PCRA petition were discussed in this

Court's Memorandum Order, filed March 20, 2017. We refer the Pennsylvania Superior Court to

the Memorandum Order in lieu of a memorandum opinion.[1]

BY THE COURT:

_____
Richard A. Lewis, President Judge

Distribution: 5/10/17 @ 1 20 pm
Ryan Lysaght, Esquire, District Attorney's Office  IO
Jennifer E. Tobias, Esquire, P.O. Box 365, Stewartstown, PA 17363  mail
Daniel Chavious, Defendant  mail
Court Administration – Criminal  IO
Clerk of Courts
FILE COPY - Chambers of the Honorable Richard A. Lewis  IO

---

[1] This Court notes that Defendant did file a "Concise Statement of Matters Complained of on Appeal Pursuant to
Pa.R.A.P. 1925(b)" in response to this Court's 1925(b) Order. All issues were addressed in our March 20, 2017
Memorandum Order.

1

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS,
: DAUPHIN COUNTY, PENNSYLVANIA
:
v. : NO. 2415 CR 2009
:
:
DANIEL CHAVIOUS : CRIMINAL – PCRA

## TRIAL COURT MEMORANDUM OPINION

Presently before this Court is Petitioner Daniel Chavious's (hereinafter "Petitioner")

Petition for Post-Conviction Collateral Relief pursuant to 42 Pa. C.S.A. §§ 9541-9551. For the

reasons set forth below, we will deny said petition.

## I. Factual Background and Procedural History.

Petitioner's instant petition for relief pursuant to the Pennsylvania Post-Conviction Relief

Act ("PCRA"), which was previously granted by the Honorable Jeannine Turgeon (hereinafter

"Judge Turgeon") of this Court, is again before this Court on Remand from the Superior Court of

Pennsylvania. The procedural and factual history surrounding Petitioner's trial, conviction, and

direct appeals in this case can be summarized by the following recitation, which is taken from an

opinion in this matter issued by Judge Turgeon on October 23, 2013:[1]

> Following a trial held December 14-16, 2009, a jury found petitioner
> guilty of three counts of unlawful delivery of a controlled substance. These
> convictions arose from petitioner's alleged sale of crack cocaine on two
> occasions to a confidential informant and on a third occasion to an
> undercover officer. Following trial, [Judge Turgeon] sentenced petitioner to
> an aggregate term of 66 to 240 months confinement. Petitioner filed a
> timely appeal to the superior court arguing that [the trial court] erred by
> failing to give a missing witness instruction and also that the evidence was
> insufficient. The superior court denied petitioner's appeal and his request
> for discretionary review before the supreme court was subsequently denied.
> Commonwealth v. Chavious, No. 158 MDA 2010 (Pa. Super. Feb. 2, 2011)

---

[1] The Superior Court also quoted portions of Judge Turgeon's recitation of the factual and procedural history of this case in its August 29, 2014 decision which ultimately remanded this matter back to this Court. See Commonwealth v. Chavious, No. 2063 MDA 2013, at 1-5 (Pa. Super. Ct. Aug. 29, 2014) (memorandum).

1

(mem.); *petition for allowance of appeal denied*, No. 138 MAL 2011 (Pa. July 12, 2011).

PCRA Court Opinion, 10/23/13, at 1-2.

In addressing petitioner's claims on appeal to the Superior Court, Judge Turgeon recited the following relevant trial evidence supporting the Petitioner's conviction:

> ...Dauphin County Detective Corey Dickerson testified that around 6:30 p.m. on February 3, 2009, he was working undercover with the Harrisburg Police vice unit. At the time, Detective Dickerson had been working with Dauphin County CID for two months. (N.T. [Petitioner's December 2009 trial] 32). Detective Dickerson, operating on information he acquired form his supervisor, Detective David Lau, became acquainted with a confidential informant to purchase $40 of crack cocaine from a man known as Dog or Duke. (N.T. 21, 33, 116)
>
> Detective Dickerson was present when the confidential informant was searched to make sure she had nothing other than what she was provided by police. (N.T. 22) After the confidential informant contacted Dog by phone, in Detective Dickerson's presence, Dog instructed the confidential informant where to meet. Detective Dickerson drove with the confidential informant to 17th and Carnation Streets in Harrisburg in an undercover vehicle. Upon their arrival, the confidential informant called Dog to let him know they were there. Dog approached the confidential informant but, upon noticing a third party, walked ahead about ten yards to an alleyway. Detective Dickerson described [Petitioner] as wearing a gray and yellow Rocawear jacket. A few moments later, the [Petitioner] called the confidential informant and told the confidential informant he didn't want to meet her driver so they arranged to meet in the alleyway. Detective Dickerson gave the confidential informant $40 and the confidential informant walked to the alleyway, out of Detective Dickerson's sight, for about 15 seconds. She then returned to the car, with [Petitioner] following behind. The confidential informant immediately handed Detective Dickerson crack cocaine wrapped in plastic wrap. Detective Dickerson drove directly into the alleyway and noticed that it was clear of people. He then drove to a secure location where he handed the drugs to Detective Lau and observed as the confidential informant was searched. (N.T. 21-25, 27, 42, 45, 52)
>
> Two days later, around 5:00 p.m., Detective Dickerson and the confidential informant arranged for a second drug deal with [Petitioner]. The confidential informant called to purchase $40 of crack cocaine and [Petitioner] again directed the confidential informant to the same location. After they parked, [Petitioner] approached the confidential informant who

2

rolled down her window at which point [Petitioner] spit out from his mouth three small plastic wrapped baggies of crack cocaine. The confidential informant handed $40 to [Petitioner]. According to Detective Dickerson, [Petitioner] was wearing the same Rocawear jacket. Detective Dickerson then observed [Petitioner] go into a building at 66 North 17th Street after the transaction. (N.T. 25-27, 30, 58)

On February 11, 2009, Detective Dickerson working alone and upon Detective Lau's direction, called [Petitioner]'s phone number and asked to purchase $40 of crack cocaine. [Petitioner] directed the undercover officer to 17th and Walnut Streets. Upon Detective Dickerson's arrival, [Petitioner], wearing head phones and the Rocawear jacket, got into the vehicle. While Detective Dickerson drove around the block, [Petitioner] gave him crack cocaine and Detective Dickerson drove to a secure location and turned the drugs over to Detective Lau. At trial, Detective Dickerson identified the man known as Dog to be Daniel Chavious. (N.T. 28-31)

Sergeant Brenda Holmes, a vice unit supervisor with the Harrisburg Police, testified that she performed the searches on the confidential informant before and after the February 3 and 5, 2009 drug transactions and confirmed that she found no contraband or cash on the confidential informant. (N.T. 74-77) Detective Dickerson testified that after each initial search, he never lost sight of the confidential informant except for the 15 seconds she disappeared into the alleyway during the first transaction. (N.T. 79-80)

Detective Dickerson testified that during each of the three transactions, he was able to provide about five minutes' notice to other police officers involved in the operation of the planned location of the transactions so they could conduct surveillance and provide backup. (N.T. 38-39, 49-50, 54-56, 66) Harrisburg Police Officer Levell Jenkins, who worked in the vice unit, testified that he provided such backup and surveillance. (N.T. 81) He stated that during the surveillance operations, he was in constant communications with the other officers, including the undercover officer who would provide a description of the suspect and his location during the course of events. (N.T. 94) He testified that while providing surveillance on February 3, 2009, after [Petitioner] had completed the transaction with the confidential informant and Detective Dickerson, he observed [Petitioner] go into a building at 66 North 17th Street. (N.T. 81) Officer Jenkins testified that regarding the third transaction on February 11, 2009, he also provided surveillance and again observed [Petitioner] after the transaction walk into 66 North 17th Street. (N.T. 82)

Officer Jenkins also testified that, based upon information provided by the undercover officer including a description of what [Petitioner] was wearing, police were able to video record [Petitioner's] movements shortly

3

following both the first and third transactions. (N.T. 82, 94) Those video recordings were played for the jury. The earlier video, taken at 6:38 p.m. showed [Petitioner] walk into a house at 66 North 17th Street. (N.T. 84) The latter video showed [Petitioner] walking west on Carnation Street, then south on 17th Street to Regina Street where he walked into a store. The video follows him walking west and north on 17th Street and into the home at 66 North 17th Street. (N.T. 86) [Petitioner] is shown in this video wearing a gray Rocawear jacket and headphones. (N.T. 86) This video was taken between 3:34 and 3:38 p.m.

Harrisburg Police Detective David Lau, who was in charge of the undercover operation, testified that he was not present at the three drug transactions but did receive evidence from Detective Dickerson within about twenty minutes after they had concluded. (N.T. 97) He testified that the contraband purchased from [Petitioner] was later tested to be crack cocaine in the amounts of .041, .042 and .036 grams, respectively. (N.T. 98-105)

Detective Lau testified that the confidential informant had been arrested prior to providing information to the police and that she worked for the police either to help reduce her charges or for money. (N.T. 115) He stated that the confidential informant received cash, probably $40, for each of the two transactions she helped set up. (N.T. 116) Detective Lau testified that all of the deals were made with recorded money though none of that money was recovered from [Petitioner]. (N.T. 140)

[Petitioner] was arrested and charged with three counts of unlawful delivery on April 14, 2009. (N.T. 134, 142) He was listed in the criminal complaint as being homeless. (N.T. 136-37) The Commonwealth's attorney read into the record a stipulation reached by the parties which was that in January 2009, [Petitioner] reported his address as 66 North 17th Street. The parties also stipulated that in April 2009 the booking officer reported [Petitioner] as homeless but that also at another point in April 2009, [Petitioner] reported his address as 66 North 17th Street. (N.T. 149)

Commonwealth v. Chavious, 2415 CR 2009, pp. 1-4 (Dauphin Cnty. C.P. May 25, 2010).

Subsequent to unsuccessful direct-appeal attempts, Petitioner filed the instant PCRA petition. The procedural history surrounding the instant PCRA petition can be summarized by the following recitation, which is also taken from Judge Turgeon's October 23, 2013 opinion:

Petitioner filed a timely pro se PCRA petition on May 15, 2012. His attorney Jennifer Tobias later filed a motion to withdraw which [Judge Turgeon] denied on the basis that counsel had not reviewed all of the claims

4

asserted in the pro se petition. [Judge Turgeon] directed that she fully address them in a supplemental filing. In response, Ms. Tobias filed a PCRA petition April 3, 2013 seeking an evidentiary hearing for the purpose of determining whether petitioner's trial attorney was ineffective for having failed to obtain phone records, which would have presumably and definitively revealed that the phone number which petitioner allegedly used to contact the confidential informant and Detective Dickerson had not been activated until a month after the alleged drug deals. Petitioner claimed that the evidence supporting his convictions was completely fabricated and these phone records would so prove. Petitioner's [PCRA] counsel also sought an evidentiary hearing in order to determine whether petitioner's other broadly stated claims . . . had any merit. PCRA counsel had not sought to obtain the phone or the phone records. Therefore, following the [July 29, 2013] evidentiary hearing, [Judge Turgeon] issued an order, August 2, 2013, directing that the record be held open for thirty days during which petitioner's attorney would make all reasonable efforts to obtain any and all phone records necessary to fully pursue petitioner's PCRA claim alleging ineffective assistance of trial counsel for failure to obtain said records. [Judge Turgeon] directed as well that the Commonwealth "provide petitioner's attorney with all relevant evidence available to it of phone number and/or records relevant to the three drug transactions at issue." [Judge Turgeon] also directed the parties to submit briefs on the phone records issue.

\*\*\*

Petitioner's attorney, in her brief, stated that after the PCRA hearing, and pursuant to [Judge Turgeon's] order, she reviewed Detective Dickerson's undercover officer worksheets, which showed he recorded in his paperwork that the phone number allegedly used by petitioner during the drug buys was 717-370-8630. These worksheets had been identified as Commonwealth Exhibits (#1-3) for trial, though they were not admitted. Petitioner's attorney further noted that she contacted the cell phone provider, Boost Mobile, but was informed that it stores records for only eighteen months and thus no longer had access to them; however, it would have had the records from the alleged drug transaction calls, made in February 2009, at the time of trial, held in December 2009.

Because petitioner's attorney was unable to obtain Boost Mobile's records, she requested from the lead detective in the case, Detective David Lau, that he provide her with petitioner's phone so she could attempt to obtain records of all phone calls made to and from the phone (as well as its period of activation), which are recorded on a chip in the phone. Police had confiscated petitioner's phone at the time of his arrest. Incredibly, counsel was informed that the phone had been destroyed just one week prior to her request. [As of October 23, 2013], [t]he Commonwealth ha[d] not disputed

5

that the phone was destroyed in the manner represented by Attorney Tobias.[2]

PCRA Court Opinion, 10/23/13, at 1-6 (internal citations and some internal footnotes omitted).

In her October 23, 2013 opinion, Judge Turgeon then granted Petitioner's PCRA petition, reasoning as follows:

> Inasmuch as the Commonwealth is responsible for depriving petitioner of the only means to prove his claim, and given the applicable inference that the fact finder can consider that the destroyed evidence would have been unfavorable to the Commonwealth, I grant his request for a new trial and vacate his judgment of sentence.

PCRA Court Opinion, 10/23/13 at 1.

The Commonwealth then appealed Judge Turgeon's ruling to the Superior Court of Pennsylvania, raising the following two arguments on appeal: (1) that Judge Turgeon erred in finding that Petitioner had received ineffective assistance of trial counsel since he failed to show that his underlying claim had any arguable merit and/or that there was a reasonable probability

---

[2] Judge Turgeon's October 23, 2013 opinion stated as follows:

> In its brief, the Commonwealth failed to address Attorney Tobias' claim that the police had destroyed the phone. [Judge Turgeon's] staff thereafter contacted the attorney who represented the Commonwealth at the [July 29, 2013] PCRA hearing by email and requested if he could confirm that the phone had been destroyed as indicated by Ms. Tobias. The email response provided by the Commonwealth attorney was that he could not confirm or deny Ms. Tobias' representation.

PCRA Court Opinion, 10/23/13, at 6 n.6.

Judge Turgeon also stated as follows:

> The destruction of the phone could be considered in direct violation of [Judge Turgeon's] August 2, 2013 Order, by which I directed that the Commonwealth "provide petitioner's attorney with all relevant evidence available to it of phone numbers and/or records relevant to the three drug transactions at issue. . . ." Furthermore, even absent court order, the fact that petitioner had a pending request for PCRA relief, including a request for a new trial, was easily discoverable to those within the criminal justice system and should have precluded such destruction. The principle that any relevant evidence should not be destroyed in a pending case is beyond obvious.

Id.

6

that, but for the alleged error of trial counsel, the outcome of the trial would have been different; and (2) that Judge Turgeon erred in failing to conduct an evidentiary hearing concerning the destruction of Petitioner's cell phone. On August 29, 2014, the Superior Court issued a memorandum decision pertaining to the Commonwealth's appeal. See Commonwealth v. Chavious, No. 2063 MDA 2013 (Pa. Super. Ct. Aug. 29, 2014) (memorandum). Therein, the Superior Court only addressed the Commonwealth's second argument, that which pertained to Judge Turgeon's failure to hold an evidentiary hearing. The court ruled in favor of the Commonwealth and held that Judge Turgeon erred by granting Petitioner's PCRA petition without conducting a hearing as to the circumstances surrounding the alleged destruction of the cell phone. Id. at 7. The court reasoned that while there is generally no right to an evidentiary hearing on a PCRA petition, see Commonwealth v. Jordan, 772 A.2d 1011, 1014 (Pa. Super. Ct. 2001), such a hearing was necessary in this case because there was a genuine issue of material fact concerning the circumstances surrounding the destruction of Petitioner's cell phone. The court believed a genuine issue existed because the Commonwealth attorney's email statement to Judge Turgeon neither confirmed nor denied Attorney Tobias's assertion that the police had destroyed the cell phone. Id. at 7-8. Thus, the Superior Court reasoned, the Commonwealth should have been afforded with an opportunity to investigate the matter and present any information relevant to the circumstances of the cell phone's destruction. Id. at 8. According to the Superior Court, Judge Turgeon's failure to provide the Commonwealth with such opportunity amounted to reversible error, and the Superior Court remanded this matter with a direction to this Court that an evidentiary hearing be held regarding the circumstances surrounding the destruction of Petitioner's cell phone and the existence of any relevant phone records. Id. Due to its disposition, the Superior Court did not address the other issue the Commonwealth raised on

7

appeal—that is, whether Petitioner's underlying ineffective assistance of counsel claim had any merit. Id. at 8 n.2

On January 23, 2017, pursuant to the directive of the Superior Court's August 29, 2014 decision, we conducted an evidentiary hearing regarding the circumstances surrounding the destruction of Petitioner's cell phone. The only witness to testify at this hearing was Dauphin County evidence coordinator Charles A. Acre (hereinafter "Acre"), who testified on behalf of the Commonwealth. Acre testified that as an evidence coordinator, his responsibility is to receive evidence from Dauphin County, store it, and hold it for disposition. (Notes of Testimony, Evidentiary Hearing dated January 23, 2017, hereinafter "N.T.," at 4). Acre stated that normally when he receives evidence, he asks the prosecutor what should be done with the evidence, and then he is informed whether it should be held for a certain duration of time or destroyed. (N.T. 4-5).

As to evidence for which Acre is given no specific requests or instruction as to retention or destruction, Acre typically holds such evidence in storage for eventual destruction. (N.T. 9, 12-13). If someone requests evidence that is in storage, Acre can pull it out of storage for the requesting party, but if the evidence in storage is not requested, it is destroyed after approximately two or three years. (N.T. 9, 12-14). According to Acre, evidence is typically destroyed in a "batch." (N.T. 13). The County normally does a mass "drug burn" twice a year at a steel mill—one on a particular date in the spring and another on a particular date in the fall—to burn evidence such as drugs and firearms that is being held in storage. (N.T. 7, 14-15). In advance of the biannual drug burns, Acre pulls out any evidence which cannot be destroyed by burning (e.g. batteries and other electronic devices) and places them into separate boxes so that he can take them out to a recycling center in Dauphin County. (N.T. 7-8, 15-16). According to

8

Acre, there are typically two scheduled occasions per year on which the County takes multiple boxes of recyclable-type evidence to the recycling center. (N.T. 15-16).

With regard to Petitioner's case, Acre stated that on December 15, 2009, he received some crack cocaine and two cell phones that had been used as evidence in Petitioner's conviction. (N.T. 4-5). Acre destroyed both of the cell phones involved in this case on August 16, 2013, and the drugs associated with the case were destroyed in September of 2013. (N.T. 5-7, 11, 14). Although he was uncertain as to which, if any, other objects were destroyed on August 16, 2013, Acre testified that the Commonwealth never directed him to destroy the cell phones that were destroyed on that date, and he was not aware of any destruction order regarding the cell phones. (N.T. 5-10, 13). Furthermore, Acre testified that to the best of his recollection, he never received Judge Turgeon's August 2, 2013 order directing that all of the evidence from the instant case be held open for thirty days, and he stated that if he had received any kind of notification that the evidence was needed, he would have pulled it from storage to prevent its destruction. (N.T. 12, 14).

At the close of the January 23, 2017 hearing that addressed the circumstances surrounding the destruction of Petitioner's phone, we ordered both parties to submit memoranda as to the issue which was not addressed by the Superior Court in its August 2014 memorandum decision—specifically, the merit of Petitioner's underlying ineffective assistance of counsel claim contained within the instant PCRA petition. On February 3, 2017, the Commonwealth filed its brief in opposition to Petitioner's instant PCRA petition, and on February 13, 2017, Defendant filed his memorandum in support of his petition. Having reviewed the parties' memoranda, we now deliver our ruling on the instant PCRA petition.

9

## II. Discussion.

The issue currently before this Court is the merit of Petitioner's ineffectiveness-of-counsel claim. The law governing ineffective assistance of counsel claims has been summarized by the Supreme Court of Pennsylvania as follows:

> There are three elements to a valid claim of ineffective assistance. We inquire first whether the underlying claim is of arguable merit; that is, whether the disputed action or omission by counsel was of questionable legal soundness. If so, we ask whether counsel had any reasonable basis for the questionable action or omission which was designed to effectuate his client's interest. If he did, our inquiry ends. If not, the appellant will be granted relief if he also demonstrates that counsel's improper course of conduct worked to his prejudice, i.e., had an adverse effect upon the outcome of the proceedings.

Commonwealth v. Davis, 541 A.2d 315, 318 (Pa. 1988) (citing Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987); Commonwealth v. Sullivan, 371 A.2d 468 (Pa. 1977); Commonwealth ex rel. Washington v. Maroney, 235 A.2d 349 (Pa. 1967)). The three prongs of an ineffective assistance claim are sometimes referred to collectively as the "*Pierce* test." See, e.g., Commonwealth v. McGill, 832 A.2d 1014, 1022-24 (Pa. 2003). Below, we address each of the three prongs of the *Pierce* test as they pertain to the instant matter.

### A. Petitioner Cannot Establish the First and Third Prongs of the Pierce Test Without Presenting the Phone Records or Phone as Evidence.

We find that Petitioner is unable to establish the first and third prongs of the *Pierce* test without presenting the phone records or the phone that he used in the alleged drug buys in 2009. Unfortunately for Petitioner, he cannot possibly produce either one because the phone has been destroyed and phone service provider Boost Mobile no longer is in possession of the relevant phone records. Thus, pursuant to the ensuing discussion, we hold that it is appropriate to dismiss Petitioner's instant PCRA petition.

10

First, we will briefly address the second prong of the *Pierce* test because based on the facts presented in the record, we believe Petitioner has established this second prong. The second prong of Pierce requires Petitioner to establish that counsel's action or inaction did not have a reasonable basis or was not the "product of a reasonable strategic decision." Commonwealth v. Pursell, 724 A.2d 293, 304 (Pa. 1999) (citation omitted). "With regard to the second, reasonable basis prong, 'we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis.'" Commonwealth v. Chmiel, 30 A.3d 1111, 1127 (Pa. 2011) (quoting Commonwealth v. Washington, 927 A.2d 586, 593 (Pa. 2007)). In the instant matter, we conclude that Petitioner's trial attorney had no reasonable basis for failing to obtain the phone records at issue. At the July 29, 2013 PCRA hearing before Judge Turgeon, Petitioner's trial attorney, Attorney Pasqualini testified that she remembered Petitioner asking her to obtain the phone records and that Petitioner made such request on more than one occasion (Notes of Testimony, July 29, 2013 PCRA Hearing, hereinafter "N.T.," at 17). Attorney Pasqualini testified that she never secured the phones records, and when asked if there was a reason why she did not secure the phone records, Attorney Pasqualini simply replied, "No." (N.T. at 17-18). Thus, per Attorney Pasqualini's own testimony, she had no reason for failing to obtain the phone records, and, therefore, it cannot be said that such decision had a reasonable basis or was the product of a reasonable strategic decision. Consequently, Petitioner satisfies the second prong of the *Pierce* test.

We now turn to the first and third prongs of the *Pierce* test. The first prong of the *Pierce* test inquires "whether the underlying claim is of arguable merit; that is, whether the disputed action or omission by counsel was of questionable legal soundness." Davis, 541 A.2d at 318.

11

Stated differently, a court examines "whether there is arguable merit to the claim that counsel's performance was substandard or deficient." Commonwealth v. Perry, 644 A.2d 705, 709 (Pa. 1994). As to the third prong of the *Pierce* test, such prong requires that counsel's improper course of conduct worked to a defendant's prejudice. Prejudice is established where a petitioner demonstrates that "but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." Commonwealth v. Kimball, 724 A.2d 326, 333 (Pa. 1999). In other words, a defendant must show that counsel's act or omission had an "adverse effect on the outcome of the proceedings." Commonwealth v. Marshall, 633 A.2d 1100, 1109 (Pa. 1993).

In the instant matter, Petitioner cannot satisfy either the first or third elements of the *Pierce* test. Petitioner claims that the phone records that Attorney Pasqualini failed to acquire would have established that the phone number used for the alleged drug buys was not in service until a month after the alleged buys occurred. Thusly, Petitioner claims, such records would have impeached Detective Dickerson's trial testimony, as Detective Dickerson apparently testified that such phone number was used for the drug transactions which gave rise to Petitioner's conviction. Unfortunately, however, since the subject phones and records have been destroyed, we are unable to determine what was contained therein and what they would establish. All we could do is engage in speculation and conjecture as to what this evidence would have shown, and drawing inferences from such speculation would be inappropriate. See Pursell, 724 A.2d at 311 ("Claims of ineffective assistance of counsel that are based on speculation and conjecture do not adequately establish the degree of prejudice necessary; namely, that there is a reasonable probability that, but for counsel's error's, the outcome of the proceeding would have been different."). As such, Petitioner cannot possibly establish that either the subject phone or

12

phone records would have likely changed the outcome of his criminal trial had Attorney Pasqualini obtained them and introduced them as evidence, and he cannot establish the third element of the *Pierce* test. Furthermore, as a result, Petitioner cannot establish the first element of the *Pierce* test. Considering that we are unable to ascertain the content of the phone or phone records and, therefore, are unable to examine the potential impact they may have had on the outcome of Petitioner's trial, we cannot make a determination as to whether Attorney Pasqualini acted in a substandard manner by failing to obtain and introduce such evidence requested by Petitioner.

## B. The Circumstances Surrounding the Destruction of the Cell Phones.

Although we have determined that Petitioner cannot satisfy the *Pierce* test with regard to Attorney Pasqualini's failure to obtain the requested phone records, we must also engage in a brief discussion regarding the circumstances surrounding the destruction of the cell phones allegedly used in Petitioner's drug buys. Judge Turgeon previously granted Petitioner's PCRA petition without holding a hearing regarding the destruction of the phones. Because the phones had been destroyed one week prior to Attorney Tobias's requests for them, Judge Turgeon inferred that the Commonwealth had destroyed them because they would have been adverse to the Commonwealth's position in the instant matter. The Commonwealth appealed Judge Turgeon's decision to our Superior Court, and the Superior Court held that Judge Turgeon had erred by granting the petition without a holding a hearing. Our Superior Court reasoned that the Commonwealth should have an opportunity to provide evidence pertaining to the circumstances surrounding the destruction of the phones; thus, a genuine issue of material fact existed regarding the circumstances of said phones. The Superior Court remanded the case to this Court and ordered that a hearing be held on this issue.

13

Having held the hearing ordered by our Superior Court, we conclude that although the timing of the phones' destruction was unfortunate, nothing was elicited from Acre's testimony regarding their destruction which would justify an adverse inference against the Commonwealth. Acre testified that the Commonwealth did not direct him to destroy the phones, nor was he aware of any other destruction order pertaining to the phones. Additionally, Acre stated that he received no orders or notifications directing him to retain the phones and that if he had received such a notification, he would have pulled the phones from storage to prevent their destruction. Acre testified that it is regular practice for Dauphin County to destroy evidence after it sits unrequested in storage for several years and that such destruction typically occurs on particular dates biannually; in any given year, drugs and firearms are usually taken to a steel mill on two specific dates to be burned, and shortly before these dates, non-burnable evidence is removed for disposition by other means. In the instant matter, it was not merely the cell phones that were destroyed in temporal proximity to Judge Turgeon's August 2, 2013 order. Rather, both the cell phones and the drugs involved in Petitioner's alleged drug buys were destroyed within one month of each other, the drugs being destroyed in September 2013 and the phones being pulled for destruction just a month earlier; in light of this fact as well as Acre's testimony that he received no direction from the Commonwealth to destroy the phones and that he never received any direction from this Court to retain the phones, we find no reason to believe that the evidence from the instant case was not destroyed as a part of that regular course of conduct.

Because there is no evidence that that the phones were destroyed in bad faith, we believe that granting Petitioner's PCRA petition merely because they were destroyed would not be appropriate.

14

## C. Additional Evidence Supports Petitioner's Conviction.

Furthermore, even absent the phone-related evidence, we find that there was other sufficient evidence presented at trial to sustain Petitioner's conviction. The phones allegedly involved in the drug transactions were not the only evidence upon which the Commonwealth relied in obtaining its conviction, nor were they the only evidence that supported the conviction in this case.[3] Detective Dickerson also testified that he was in the vicinity of each drug transaction as they occurred and that he actually observed each transaction as they occurred. In one of the alleged transactions, Detective Dickerson was acting undercover and purchased cocaine himself directly from Petitioner. With regard to the two alleged drug transactions in which the confidential informant ("CI") was the buyer, Detective Dickerson testified that he was in the immediate vicinity of both drug transactions as they occurred. Petitioner contends that Detective Dickerson's testimony regarding the first alleged CI transaction is insufficient to sustain a conviction because the CI and Petitioner had retreated to an alleyway out of Detective Dickerson's sight at the time the CI allegedly gave Petitioner $40.00 in exchange for drugs. We find this contention inapposite. Although Detective Dickerson may not have observed the actual exchange, the CI nonetheless emerged from the alleyway with cocaine and gave it to the Detective. The CI and Petitioner were only out of Dickerson's sight for about fifteen (15) seconds, and the CI had been searched for drugs and paraphernalia before each buy was executed. Furthermore, the trial testimony established that it was Petitioner himself who requested that the first alleged CI transaction be conducted in the alleyway because he did not want to conduct such transaction in the presence of the CI's driver (who, unbeknownst to

---

[3] Furthermore, as noted earlier, Detective Dickerson's undercover-officer worksheets on which he recorded the phone number allegedly used by Petitioner in the drug buys were not admitted as evidence at trial, even though the Commonwealth had marked them as Exhibits. As such, the phone number itself appears not to have played a role in leading the jury to its finding of guilt.

15

Petitioner, was Detective Dickerson). As such, Petitioner would have us believe that it was by pure happenstance that the CI (despite being searched by police before the initiation of the controlled buy) went into an alley with Petitioner at Petitioner's own request and returned just fifteen seconds later with drugs from a source different than Petitioner himself. That confluence of happenstance is beyond any reasonability.

Additionally, even if Detective Dickerson's observances regarding the first CI transaction were deficient, his testimony regarding the second CI transaction established that he was able to clearly view the exchanging of drugs and money on that occasion. During the second CI transaction, Detective Dickerson saw Petitioner spit out three baggies of cocaine directly into the vehicle in which the CI and Detective Dickerson were sitting, and the CI handed Petitioner $40.00 from that same vehicle. Thus, Petitioner and the CI were never out of Detective Dickerson's sight during the second CI transaction, and in fact, the exchange of cocaine and cash took place in the very vehicle in which Detective Dickerson was sitting.

## III. Conclusion.

In light of the foregoing discussion, we conclude that Petitioner fails to state a claim for relief under Pennsylvania's Post Conviction Relief Act. Accordingly, we enter the following:

*(This space intentionally left blank)*

16

COMMONWEALTH OF PENNSYLVANIA  :  IN THE COURT OF COMMON PLEAS,
                                                          :  DAUPHIN COUNTY, PENNSYLVANIA

                  v.  :  NO. 2415 CR 2009

DANIEL CHAVIOUS  :  CRIMINAL – PCRA

## ORDER OF COURT

**AND NOW**, this 20th day of March, 2017, upon consideration of the Petition for Post-Conviction Collateral Relief filed by Defendant Daniel Chavious, and of the relevant statutory and case law, this Court finds that Defendant is not entitled to post-conviction collateral relief. Therefore, **IT IS HEREBY ORDERED** that his petition is **DISMISSED.**

**Defendant has the right to appeal this decision to the Superior Court of Pennsylvania. This appeal must be taken within thirty (30) days of the date of this Order.**

Furthermore, the Clerk of Courts of Dauphin County shall immediately serve a copy of this Order upon the Defendant and the Defendant's counsel by certified mail, return receipt requested, as well as upon the District Attorney.

BY THE COURT:

_____
Richard A. Lewis, President Judge

Distribution:  3|21  at 8:45am

Ryan Lysaght, Esquire, District Attorney's Office  1 O
Jennifer E. Tobias, Esquire, P.O. Box 365, Stewartstown, PA 17363  MAIL
Daniel Chavious, Defendant  MAIL
Court Administration – Criminal  1 O
Clerk of Courts
FILE COPY - Chambers of the Honorable Richard A. Lewis  1 O

17