J-S15039-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FLOYD HARRY WATSON | : | |
| | : | |
| Appellant | : | No. 1503 WDA 2024 |

Appeal from the PCRA Order Entered November 6, 2024
In the Court of Common Pleas of Clarion County Criminal Division at
No(s):  CP-16-CR-0000086-2020

BEFORE:   OLSON, J., SULLIVAN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:         **FILED: AUGUST 8, 2025**

Appellant, Floyd Harry Watson, appeals from the denial of his petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S. § 9541 *et seq.* ("PCRA"), collaterally challenging his jury convictions of 14 counts each of involuntary sexual deviate intercourse ("IDSI") by threat of forcible compulsion, IDSI of a person less than 16 years of age, sexual assault and statutory sexual assault, 13 counts each of aggravated indecent assault without consent,  aggravated indecent assault of a person less than 16 years of age, indecent assault without consent and indecent assault of a person less than 16 years of age, and one count each of rape, endangering the welfare of

---

[*] Retired Senior Judge assigned to the Superior Court.

a child and corruption of minors.[1] Appellant alleged trial counsel was ineffective in four ways, failing to: (1) permit Appellant to testify at trial; (2) seek admission of texts between Appellant and other persons in his family; (3) file a pretrial motion seeking admission of evidence of the victim's sexually transmitted disease ("STD"); and (4) object to the prosecutor's closing summation. After an evidentiary hearing, the PCRA court denied the petition. We affirm.

K.H., the victim in this case, was the stepdaughter of Appellant. Her mother ("Mother") had married Appellant when K.H. was a baby. Mother and Appellant had three children of their own, K.H.'s younger half-siblings. Appellant also had a son from a prior relationship. K.H. lived with Mother in Appellant's home from when she was a baby until she was 17 years old in the first half of 2019. In June 2019, Mother moved out of Appellant's home along with K.H. and K.H.'s three half-siblings. A few weeks later they all moved into the home of Sean Lander with whom Mother had begun a relationship. On August 20, 2019, K.H. went to the Pennsylvania State Police with her then-boyfriend and Lander to report that she had been sexually abused by Appellant. *See* N.T. Trial, 9/23/21, 35-38, 105, 108-109.

The earliest incident K.H. could recall was Appellant forcing her to perform fellatio on him inside the family home when she was 11 years old.

---

[1] *See* 18 Pa.C.S. §§ 3123(a)(2), 3123(a)(7), 3124.1, 3122.1(b), 3125(a)(1), 3125(a)(8), 3126(a)(1), 3126(a)(8), 3121(a)(1), 4304(a)(1), and 6301(a)(1)(ii), respectively.

Similar incidents continued through the years until she moved out with Mother. The last incident occurred shortly before K.H. moved out of the house when Appellant laid down next to her on a couch in the living room, then put his hands near her vagina before placing them on her buttocks and breasts. Oftentimes the incidents happened when Appellant came home early from work and would take K.H. upstairs with him for a "nap" in his bedroom. Once behind a locked door he would make her perform fellatio, calling her "baby" while she did. Sometimes Appellant made K.H. perform fellatio on him in the bathroom. One time he made her perform fellatio as payment for his having to drive her to work. At least one incident of mandated fellatio occurred in a parking lot at Kahle Lake where Appellant brought K.H. ostensibly to teach her how to drive on winter roads. Other incidents of mandated fellatio occurred at the family cabin in Rockland, Pennsylvania. Appellant also inserted his fingers into K.H.'s vagina. Appellant did not have vaginal intercourse with K.H. One time, before her 14th birthday, Appellant told her he wanted to perform anal intercourse on her and offered to give her a video game in return. K.H. did not want to do it, but Appellant forced her to do it. K.H. bled from the anal intercourse for a week after the incident. K.H. kept the abuse secret because she believed Appellant when he told her that it would ruin the lives of her family members if their illicit activities became known. *See* N.T. Trial, 9/23/21, 38-49, 56-57, 80, 107-108, 112, 135-136, 144.

When she was 16 years old, K.H. told a friend and her then-boyfriend about the sexual abuse. One or both of them informed someone at school.

When K.H. arrived at school one day, members of Children and Youth Services ("CYS") were present to speak with her. K.H. denied to CYS that anything sexual had happened between her and Appellant, because she "was too scared to admit the truth." When Mother came to pick her up from school, though, she revealed to her generally that Appellant had been touching her inappropriately. Soon thereafter, K.H. told her entire family about the CYS allegations about Appellant inappropriately touching her and that the allegations were true. Appellant was present for at least one family meeting about the allegations. According to K.H. and K.H.'s oldest half-brother, Appellant admitted during the meeting that he had sexual contact with K.H. but claimed it was consensual. Mother testified to another confrontation with Appellant when he admitted to sexual contact with K.H. *See* N.T. Trial, 9/23/21, 49-55, 56-57, 88-92, 101, 137-138.

After K.H. moved with Mother into Lander's home, Lander convinced her to report Appellant's conduct to the state police. He believed that both K.H. and Mother were intimidated by the idea of reporting Appellant, but he tried to make them feel safe in his home and instill in K.H. the strength to report Appellant's abuse. On August 20, 2019, he brought K.H. to the Pennsylvania State Police where K.H. was interviewed by a Trooper. *See* N.T. Trial, 9/23/21, 55-56, 90-91, 109, 127-129.

After the state police investigation, Appellant was charged with numerous sexual offenses arising from his conduct with K.H. He was tried by a jury on September 23 and 24, 2021. Appellant presented multiple witnesses

to attest to his good character and his oldest son, stepbrother to K.H., to testify he never saw suspicious activity between Appellant and K.H. and to claim that Appellant and K.H. were never left at home alone with each other. **See** N.T. Trial, 9/23/21, 155-158, 160-169, 172-182; N.T. Trial, 9/24/21, 3-7. In addition, Appellant presented both the mother of his eldest child and his then-fiancée to testify that he was unable to obtain an erection when he was drunk to contradict K.H.'s and Mother's testimony that many of the incidents happened when Appellant was drunk and that he was able to obtain an erection when drunk. **See** N.T. Trial, 9/23/21, 83, 105, 110, 177-178, 181, 182. Appellant elected to not testify at the close of the first day of testimony after six of his seven defense witnesses had testified. **See id.**, 186-189. The jury found Appellant guilty of all charges. **See** N.T. Trial, 9/24/21, 88-89. Prior to sentencing, trial counsel moved to withdraw from representation of Appellant and was replaced by present counsel. On March 23, 2022, the court imposed an aggregate term of incarceration of 324 to 720 months, as amended on April 5, 2022. **See** Trial Court Opinion, 11/5/24, 2; Amending Order, 4/5/22, 1-2.[2]

---

[2] The Amending Order imposed the following terms of incarceration of: 60 to 120 months on count 2 (IDSI by threat of forcible compulsion); consecutive 60-120 months on count 3 (IDSI by threat of forcible compulsion); consecutive 60 to 120 months on count 4 (IDSI by threat of forcible compulsion); consecutive 60 to 120 months on count 5 (IDSI by threat of forcible compulsion); consecutive 60 to 120 months on count 6 (IDSI by threat of forcible compulsion); consecutive 12 to 60 months on count 70 (endangering the welfare of a child); consecutive 12 to 60 months on count
*(Footnote Continued Next Page)*

Counsel for Appellant timely filed a post sentence motion, and subsequently amended it on May 17, 2022, alleging trial counsel's ineffective assistance. On June 20, 2022, the trial court presided over an evidentiary hearing. Appellant testified to two instances of alleged ineffective assistance concerning trial counsel's failure to permit him to testify at trial and to use text exchanges between Appellant and his family to impeach witness testimony. **See** N.T. Post Sentence Motion, 6/20/22, 5-65. In addition, Appellant alleged two other instances of ineffective assistance based on the trial record, trial counsel's failure to litigate pre-trial a motion to permit evidence of the victim's STD and to object to the prosecutor's summation. **See** **id.** 87. Trial counsel Leonard Berger also testified at the hearing to explain his strategic decisions on each of the four allegations of his ineffective assistance. **See id.**, 88-103. The trial court requested post hearing briefs by the parties,

---

71 (corruption of minors); concurrent 60 to 120 months on each of counts 7 through 15 (IDSI by threat of forcible compulsion) and 16 through 29 (IDSI of a person less than 16 years old); and concurrent 30 to 60 months on counts 98 through 111 (statutory sexual assault). **See** Amending Order, 4/5/22, 1-2. In addition, the court ruled that the following convictions merged for sentencing purposes: count 1 (rape) merged with count 2 (IDSI by threat of forcible compulsion); counts 30 through 43 (sexual assault), counts 44 through 56 (aggravated indecent assault without consent), and counts 72 through 84 (indecent assault without consent) merged into counts 2 through 15 (IDSI by threat of forcible compulsion); counts 57 through 69 (aggravated indecent assault of a person less than 16 years old) counts 85 through 97 (indecent assault of a person less than 16 years old) merged with counts 16 through 29 (IDSI of a person less than 16 years old). **See id**.

which were duly filed. On August 29, 2022, the trial court issued an opinion denying Appellant's amended post sentence motion.

In his direct appeal, Appellant forwarded the four allegations of ineffective assistance raised in his amended post sentence motion. However, the allegations of ineffective assistance were deferred to collateral review. The direct appeal panel noted that there were two possibly applicable exceptions to the general rule of deferral adopted in **Commonwealth v. Holmes**, 79 A.3d 562 (Pa. 2013), to permit review of Appellant's ineffectiveness claims on direct appeal, either for meritorious issues apparent on the record or for good cause on unitary review after waiving PCRA review. **See Commonwealth v. Watson**, 310 A.3d 307, 310-311 (Pa. Super. 2024). We noted that neither Appellant nor the trial court addressed either of the exceptions. **Id.** Analyzing both exceptions, we determined that neither applied. With respect to the exception for meritorious issues apparent on the record, we held that "a claim is not apparent from the record where the trial court is required to schedule an evidentiary hearing to reach the merits." **Id.** at 311 (internal quotation marks omitted). Additionally, Appellant did not even allege any extraordinary circumstances to warrant discretionary review of the ineffectiveness claims raised in the post sentence motion. **Id.** at 311-312. With respect to the second **Holmes** exception, we held that Appellant neither argued he had good cause for raising ineffective assistance claims in a post sentence motion, nor made "a knowing waiver of his right to [subsequent] PCRA review." **Id.** at 312. Additionally, the trial court did not make a finding that there was good cause.

*Id.* Accordingly, this Court deferred Appellant's ineffective assistance claims to PCRA review and dismissed the direct appeal. *Id.* at 313.

On May 9, 2024, Appellant filed a PCRA petition forwarding the same ineffective assistance allegations from his post sentence motion. *See* Appellant's PCRA Petition, 5/9/24, ¶ 4(a-d). On November 5, 2024, the PCRA court filed its opinion denying relief. *See* PCRA Opinion and Order of Court, 11/5/24 (the "PCRA Court Opinion").

Appellant filed a timely notice of appeal and then a concise statement of errors complained of on appeal as ordered by the PCRA court. *See* Pa.R.A.P. 1925(b). Appellant raises the following claims for our review:

> 1. Whether the PCRA court abused its discretion or [erred] as a matter of law when the PCRA court concluded that [t]rial counsel was not ineffective for failing to permit [Appellant] to testify at trial;
>
> 2. Whether the PCRA court abused its discretion or [erred] as a matter of law when the PCRA court concluded that the trial counsel was not ineffective for failing [to] present numerous pieces of evidence including text messages that would have impeached witnesses' testimony;
>
> 3. Whether the PCRA court abused its discretion or [erred] as a matter of law when the PCRA court concluded that trial counsel was not ineffective for failing [to file] a pretrial motion raising the issue [of] the victim having [a] prior [STD] as required under the Rape Shield Statute;
>
> 4. Whether the PCRA court abused its discretion or [erred] as a matter of law when the PCRA court concluded that trial counsel did not fail to object to the district attorney's closing when the district attorney remarked that [Appellant] confessed and said [Appellant] was guilty.

Appellant's Brief, 5-6.

"We review the denial of PCRA relief to decide whether the PCRA court's factual determinations are supported by the record and are free of legal error." *Commonwealth v. Brown*, 196 A.3d 130, 150 (Pa. 2018). "When supported by the record, the PCRA court's credibility determinations are binding on this Court, but we apply a *de novo* standard of review to the PCRA court's legal conclusions." *Id*.

> With respect to claims of ineffective assistance of counsel, counsel is presumed to be effective, and the petitioner bears the burden of proving to the contrary. To prevail, the petitioner must plead and prove, by a preponderance of the evidence, the following three elements: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice as a result of counsel's action or inaction. With regard to the second prong (reasonable basis), "we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." We will hold that counsel's strategy lacked a reasonable basis only if the petitioner proves that a foregone alternative "offered a potential for success substantially greater than the course actually pursued." Our review of counsel's performance "must be highly deferential." To establish the third element (prejudice), the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction.

*Brown*, 196 A.3d at 150–51 (internal citations omitted). A failure to satisfy any of the three prongs is fatal to the petitioner's claim that counsel was ineffective. *Id.* at 151; *Commonwealth v. Midgley*, 289 A.3d 1111, 1119 (Pa. Super. 2023). We may discuss any part of an ineffectiveness claim "that an appellant cannot satisfy under the prevailing law and the applicable facts

and circumstances of the case." ***Commonwealth v. Johnson***, 139 A.3d 1257, 1272 (Pa. 2016).

Appellant's first allegation of ineffective assistance argues that "trial counsel prevented him from testifying." Appellant's Brief, 13. As an initial matter, we note that "where a defendant voluntarily waives his right to testify after a colloquy, he generally cannot argue that trial counsel was ineffective in failing to call him to the stand." ***Commonwealth v. Rigg,*** 84 A.3d 1080, 1086 (Pa. Super. 2014).

Appellant argues it "is completely [his] decision" whether to testify or not, citing ***Commonwealth v. Walker***, 110 A.3d 1000, 1005 (Pa. Super. 2015), for the proposition that prejudice for this claim is measured by whether the result of the waiver colloquy would have been different absent counsel's ineffectiveness. Appellant's Brief, 13. Acknowledging that the PCRA court found his claim to be meritless because Appellant declined to testify after a "proper colloquy" was held by the court on the first day of trial, he argues that the PCRA court erred because it credited trial counsel's testimony that he did not hear Appellant when he supposedly said he wanted to testify during the testimony of the first and only witness on the second day. ***Id.***, 13-15. Appellant asserts that the PCRA court erred because both he and trial counsel testified that counsel "shushed" him, from which only two conclusions may be drawn, either: "trial counsel prevented [Appellant] from testifying" and was ineffective; or "trial counsel never conferenced with his client to determine his

client's input or request" and was ineffective "for failing to conference with his client." ***Id.***

Appellant's argument presents a logical fallacy. There were not only two conclusions to derive from the testimony. Trial counsel did not testify he shushed Appellant when Appellant supposedly asserted to him that he had changed his mind about testifying but that he did not recall Appellant notifying him that he changed his mind. The PCRA court explained:

> [Appellant] testified that he knowingly and voluntarily waived his right to testify the first day of the trial, but the second day, he claimed to have "changed his mind." [Appellant] mentioned attempting to inform Attorney Berger about his desire to testify but claimed Attorney Berger responded by "shhing" him. Attorney Berger stated he did not recall [Appellant] expressing a desire to testify. He noted that if such an exchange occurred, it would have taken place during the questioning of [Appellant's] sister-in-law … During trial, Attorney Berger instructs his clients to write down any questions or concerns while he is questioning a witness. Attorney Berger observed [Appellant neither wrote a request] nor made any further attempts to testify the second day of trial.

PCRA Court Opinion, 4 (internal record citations omitted).

Appellant testified that he changed his mind when, while the last trial witness was testifying, he made eye contact with some of the jurors. N.T. Post Sentence Motion, 6/20/22, 6. He testified at the post sentence motion hearing that he then asked counsel about testifying at trial but counsel shushed him and told him to wait. ***Id.***, 6-7. Neither Appellant nor counsel brought up the subject again, but notably the defense rested soon after the witness finished testifying. ***See id.***, 7-9.

Trial counsel's testimony contrasted with Appellant's on a key point. He testified that he and Appellant discussed whether Appellant would testify and that, based on counsel's advice, Appellant decided against testifying and informed the trial court during a colloquy. *Id.*, 88-89; *see also* N.T. Trial, 9/23/21, 186-189 (colloquy of non-testifying defendant conducted by court after the final witness of the first day of trial completed testimony). Appellant's decision was consistent with counsel's advice, which he testified had been given in the "strongest possible terms," that Appellant testifying at trial would not be in Appellant's best interest. N.T. Post Sentence Motion, 6/20/22, 102. Counsel did not recall Appellant telling him that he had changed his mind. *Id.*, 89. He did not remember shushing Appellant, but admitted it would not have been inconsistent with his practice as he focuses his full attention on the witness testifying. *See id.*,100-101. He also described his practice of providing paper and a pen for his clients to write him notes while witnesses are testifying so that his clients can ask him questions while he's focused on the witness. *Id.* He then explained that, if Appellant had written his concern about testifying down, he would have looked at it when he first had the chance and would have then spoken with Appellant about testifying. *Id.*, 89-90. Appellant did not write a question about testifying or ask counsel about it after the witness finished testifying. *See id.*, 90-91. Counsel also stated his full recognition that it was Appellant's decision whether he waived the right to testify and his role was to advise Appellant. *Id.*, 90, 102.

The PCRA court's conclusion, therefore, that trial counsel "did not hear his client asking to testify while he was questioning a witness at trial, and [Appellant] apparently did not try to communicate with his attorney after [the witness testified]" is supported by the record evidence. PCRA Court Opinion, 5. **See also Brown**, 196 A.3d at 150. Where counsel had no reason to believe Appellant had changed his mind, and Appellant had already informed the court that he declined to testify, counsel had fulfilled his obligation to advise Appellant and did not interfere in his ability to make clear he had changed his mind. **See Commonwealth v. Nieves**, 746 A.2d 1102, 1104 (Pa. 2000) ("In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf").

Defendant's second allegation of ineffectiveness is based on more than 40 photographs of text messages, mostly between Appellant and Mother, divided into 28 exhibits. **See** N.T. Post Sentence Motion, 6/20/22, 17-65. Appellant alleges trial counsel was ineffective for failing "to present numerous text messages." Appellant's Brief, 16. He relies on case law addressing the failure to present a witness. **See id.** (citing **Commonwealth v. Pursell**, 724 A.2d 293 (Pa. 1999)). Appellant argues that the PCRA court erred in believing

all but one of the exhibits had been introduced at trial or were objectionable.[3]

*Id.*, 17. He asserts that "no argument at the post sentence hearing was made to each of those exhibits" and that the Commonwealth made only a "general argument." *Id.* Appellant then reviews each of the 28 exhibits of text messages and their alleged relevance, which, generally speaking, either showed him to be a trustworthy caretaker of his children or demonstrated increasing hostility between him and Mother over custody and divorce issues during the summer of 2019. *See id.*, 17-19. Appellant argues he was prejudiced by the failure to present the text messages because trial counsel agreed that "the defense at trial was to establish that the victim's mother and the victim had created a false story of sexual assault" to support Mother's position against Appellant in "a custody dispute" with Appellant. *Id.*, 20. He asserts that the timing of the messages, running a few months before K.H. reported the abuse to the police to a few weeks after, and the "heated text conversations" about custody, "would have established that the victim and the victim's mother were making up the story of the sexual assault." *Id.*

Although faulting the Commonwealth for responding "generally" at the post sentence motion hearing to the 28 exhibits of text messages, it was

_____

[3] On this particular point, Appellant appears to refer us to the trial court's opinion filed in connection with his direct appeal, which was dismissed. *See* Trial Court Opinion, 8/29/22, 7. However, in response to Appellant's PCRA petition, the PCRA court did not assert that some of the exhibits of text messages were introduced at trial, but found that counsel's trial strategy was reasonable "because some of the text conversations were irrelevant and cumulative of evidence already presented." PCRA Court Opinion, 5.

Appellant's burden to prove each element of his allegation of ineffective assistance. **See Brown**, 196 A.3d at 150 ("counsel is presumed to be effective, and the petitioner bears the burden of proving to the contrary"). Appellant only argues the relevance of each of his 28 exhibits of text messages. **See** Appellant's Brief, 17-19. He did not demonstrate how any of the text messages would have been admissible. Instead, he asserts they would have shown that "both the victim's mother and the victim were comfortable with the victim and other minor children being around [Appellant]," as well as establishing "that the victim and the victim's mother were making up the story of the sexual assault because before the custody argument all parties were comfortable with [Appellant]." Appellant's Brief, 20. In other words, Appellant argues on appeal that they should have been admitted to prove the truth of the assertions in the text messages. Therefore, the text messages were hearsay. **See** Pa.R.E. 801(c) (defining hearsay). "Hearsay is not admissible except as provided by [our] rules [of evidence]" or other law. Pa.R.E. 802. Appellant has not referred to, much less cited, any exception that would render the hearsay text messages admissible.

In his PCRA petition and the questions presented in his brief, Appellant asserts that the text messages "would have impeached witnesses' testimony." Appellant's Brief, 5; PCRA Petition, 5/9/24, ¶ 4(b). We thereby infer Appellant to be arguing that the text messages were prior statements by a witness inconsistent with their trial testimony and admissible to impeach that testimony. **See** Pa.R.E. 613(a) ("A witness may be examined concerning a

- 15 -

prior inconsistent statement made by the witness to impeach the witness's credibility"). However, Appellant neither identifies which witness's credibility is at issue nor specifies the testimony to be impeached. Therefore, he failed to carry his burden to prove the admissibility of any proffered text message, either as impeachment or substantive evidence.

Additionally, Appellant faults trial counsel for not putting the text messages themselves "into evidence." Appellant's Brief, 17. However, "extrinsic evidence of a witness's prior inconsistent statement is admissible only if," during the examination of the witness: (1) the written statement is shown to the witness; (2) who is "is given an opportunity to explain or deny" the making of the statement; and (3) the Commonwealth "is given an opportunity to question the witness." Pa.R.E. 613(b). Perhaps all of these requirements could have been met, but in light of his failure to identify the witnesses or specific testimony to be impeached, Appellant did not carry his burden to demonstrate there was arguable merit to his claim that counsel should have introduced the text messages "into evidence." **See** Appellant's Brief, 17. Because Appellant failed to demonstrate arguable merit to the claim the text messages were admissible, this allegation of ineffective assistance was properly denied by the PCRA court. **See Brown**, 196 A.3d at 51; **Midgley**, 289 A.3d at 1119.

In his third claim, Appellant argues that counsel was ineffective "for failing to file the proper pretrial motions to enter into evidence the victim's" STD pursuant to the Rape Shield Law, 18 Pa.C.S. § 3104. Appellant's Brief,

21. Appellant recounts that the trial court sustained on relevance grounds an objection to trial counsel's question to K.H. concerning whether she had an STD. *Id.* Citing to the requirements for admission of evidence of a "victim's past sexual conduct" under the Rape Shield Law, Appellant argues counsel should have filed a pre-trial motion seeking admission of the STD evidence because it "would have established that [he] did not commit the criminal offenses," as he did not have an STD, and "avoided even using the same bathroom as the victim due to her disease." *Id.*, 21-22.

In pertinent part, the PCRA court ruled that this claim failed "because the evidence of the victim's alleged [STD] was not ruled inadmissible by the court due to [trial counsel's] failure to file a pretrial motion seeking to have the evidence admitted," but rather because the evidence was "irrelevant and excluded for that reason." PCRA Court Opinion, 6. After review, we agree with the PCRA court.

Under cross-examination, K.H. confirmed to trial counsel that Appellant had asked her not to use a specific bathroom at some point. N.T. Trial, 9/23/21, 72. Trial counsel then asked, "[W]hy would he have made that type of request?" *Id.* K.H. asked for a short break, to which counsel did not object, and during the recess a discussion was held in chambers. *Id.*

Trial counsel confirmed in chambers that according to Appellant, K.H. had chlamydia when she was 16 years old. *See* N.T. Trial, 9/23/21, 73. Appellant believed the STD was very transmissible and did not want her using the bathroom. *See id.*, 73-74. Counsel stated he would not ask about "a

previous sexual encounter" but argued it was relevant that K.H. had a transmissible disease at a time she claims Appellant had vaginal intercourse with her. *Id.*, 74. The prosecutor objected on two grounds: the evidence was covered by the Rape Shield Law; and the evidence was not relevant because K.H. only testified to digital penetration of her vagina, anal intercourse, and fellatio with Appellant, and no foundation had been laid for the supposition that the STD could be transmitted without vaginal intercourse. *Id.*, 74-75. The prosecutor explicitly declined to argue that, under the Rape Shield Law, trial counsel had to file a pretrial motion. *Id.*, 78. Rather, he argued for a ruling on the admissibility of the evidence on its merits. *Id.*

The trial court confirmed to trial counsel that K.H. had not testified to vaginal intercourse. N.T. Trial, 9/23/21, 75. Because there was no evidence from which to infer that the STD was likely to be transmitted, during the relevant period and by the type of sexual contacts between Appellant and K.H., the trial court ruled the STD evidence was not relevant. *Id.*, 78-79. It affirmed it was "[n]ot saying that the connection might not occur, but as we sit here right now," it had not been established. *Id.*, 79.

Upon completion of the in-chambers discussion and with the court's permission, trial counsel asked K.H., "did you ever have vaginal sex with [Appellant]." N.T. Trial, 9/23/21, 80. K.H. answered, "No." *Id.* Trial counsel then moved on to different topics of cross-examination.

The record supports the PCRA court's ruling. The Commonwealth explicitly declined to object to counsel's failure to file a pretrial motion as

- 18 -

required by Section 3104. The trial court did not exclude the STD evidence on the grounds Appellant had not filed a pretrial motion. Rather, the trial court excluded the evidence because trial counsel did not provide a foundation to find the STD evidence relevant, that is, that the STD was likely to have been transmitted to Appellant during one specific time period given the lack of evidence that it could be transmitted by means of the contact that was testified to at trial. In sum, trial counsel's alleged failure to file a pretrial motion seeking admission of the STD evidence did not cause Appellant actual prejudice, because the STD evidence was excluded on other grounds entirely. Accordingly, Appellant failed "to establish a reasonable probability that the outcome of his trial would have been different absent counsel's alleged failures," which was fatal to his claim of ineffective assistance. **See Commonwealth v. Dowling**, 316 A.3d 32, 45 (Pa. 2024).

In his final claim, Appellant argues that trial counsel was ineffective "for failing to object to the district attorney's closing argument." Appellant's Brief, 23. He summarizes the standard of review for such claims and then asserts three categories of argument that he contends were improper: (1) arguing personal opinion by asserting that K.H. going to Appellant's house alone to check his blood pressure after moving out did not contradict the sexual assault allegations as they "had been going on so long it had become a way of life," and asserting that he thought that a lot of people had "failed" including K.H. with CYS; (2) arguing personal opinion by "asking [the jury to] believe [K.H.] and … asking [the jury to] find the defendant guilty beyond a reasonable doubt

of all offenses that are charged"; and (3) arguing facts not in evidence by asserting twice that Appellant made a confession to committing sexual acts "without a real confession being entered into evidence." ***See id.***, 24-26. He contends that trial counsel's failure to object to the prosecutor's summation ensured that Appellant "would not have a fair trial." ***Id.***, 27.

Because "[c]ounsel cannot be found ineffective for failing to pursue a baseless or meritless claim," ***Commonwealth v. Kelley***, 136 A.3d 1007, 1012 (Pa. Super. 2016), we will examine whether the underlying allegations about the prosecutor's summation have any merit.

"[I]n order to evaluate whether the comments were improper, we do not look at the comments in a vacuum; rather we must look at them in the context in which they were made." ***Commonwealth v. Weiss***, 776 A.2d 958, 968 (Pa. 2001). A prosecutor enjoys substantial latitude to present argument with "logical force and vigor." ***Commonwealth v. Bryant***, 67 A.3d 726, 728 (Pa. 2013) (citation omitted); ***Commonwealth v. Marshall***, 633 A.2d 1100, 1107 (Pa. 1993) (citations omitted). "While it is improper for a prosecutor to offer any personal opinion as to guilt of the defendant or credibility of the witnesses, it is entirely proper for the prosecutor to summarize the evidence presented, to offer reasonable deductions and inferences from the evidence, and to argue that the evidence establishes the defendant's guilt." ***Bryant***, 67 A.3d at 727-728. A prosecutor does not commit misconduct merely by summarizing the evidence "with the oratorical flair allowed during argument," ***Marshall***, 633 A.2d at 1107, or by fairly commenting on the evidence and

responding to defense arguments. ***Commonwealth v. Wayne***, 720 A.2d 456, 468 (Pa. 1998). An ineffectiveness claim based on counsel's failure to object to a prosecutor's closing argument has merit where it is demonstrated that the comment deprived the petitioner of a constitutional or statutory right, such as the right to a fair trial or due process. ***See Commonwealth v. Tedford***, 960 A.2d 1, 28-29 (Pa. 2008); ***Commonwealth v. Anderson***, 327 A.3d 273, 282 (Pa. Super. 2024). "The touchstone is the fairness of the trial, not the culpability of the prosecutor." ***Id***.

As an initial matter, Appellant only alleged before the PCRA court the ineffectiveness of trial counsel for failing to object to the prosecutor's arguments that he had "confessed" to his family and "was guilty." ***See*** N.T. Post Sentence Motion, 6/20/22, 95-96 (trial counsel's testimony that prosecutor's argument Appellant had confessed was fair characterization of trial testimony that Appellant had confirmed to his family he had sexual contact with victim); Appellant's Amended Post Sentence Motion, 5/17/22, ¶ 4(d) (alleging trial counsel's ineffectiveness for failing "to object to the district attorney's closing when the district attorney remarked that [Appellant] confessed and said [Appellant] was guilty"); Appellant's PCRA Petition, 5/9/24, ¶ 4(d) (same). Therefore, Appellant's new allegations of ineffective assistance for failing to object to statements of personal opinion were not raised in the PCRA court and are not properly before us now. ***See Commonwealth v. Paddy***, 15 A.3d 431, 446 (Pa. 2011) (noting that "[f]ailure to raise an issue before the PCRA court results in waiver").

The PCRA court ruled that Appellant's preserved claims lacked "arguable merit because the District Attorney's statements were directly related to the evidence presented at trial." PCRA Court Opinion, 7. After review, we agree with the PCRA court and find its conclusion supported by the record.

At trial, K.H. testified that sometime after CYS met with her, there was a conversation in the family living room among her, Appellant, Appellant's eldest son and K.H.'s eldest half-brother. N.T. Trial, 9/23/21, 53-54. At trial, K.H. stated that "we all had been talking about him touching me inappropriately. And he admitted it." *Id.*, 54. Upon further direct examination, K.H. explained that Appellant claimed that K.H. had performed fellatio on him in the bathtub, which she specifically stated was nonconsensual. *Id.* Likely testifying about the same family conversation in the living room, K.H.'s eldest half-brother testified that Appellant talked about the CYS allegations and said, "it was never that serious and how only a few things happened." *Id.*, 137. The half-brother added he could not "remember exactly what [Appellant] said happened, but he admitted to us that things were going on." *Id.*, 137-138. He also testified that Appellant was concerned that he should not tell anyone. *Id.*, 138. Mother, who was Appellant's wife at the time of the conversation, testified she told Appellant about the CYS meeting and the allegation he molested K.H. *Id.*, 107. Appellant did not respond at that time. *Id.* At some point after that, but before moving out, Mother confronted Appellant about the accusation. *Id.* She testified that Appellant told her, "he didn't force anybody to do anything." *Id.*, 108.

Based on this testimony, the prosecutor argued in summation concerning K.H.'s mother:

You can gauge her character or her nature by her testimony. Did she seem to be particularly strong-willed and assertive to you or was she more meek? But eventually, she does get up the courage to leave. It was after this confession: ["]I did it, but I didn't force anyone to do anything.["] She ends up leaving.

N.T. Trial, 9/24/20, 32. The prosecutor then discussed K.H.'s eldest half-brother's testimony:

And what was his testimony? His testimony was that he remembers in hindsight – he didn't think anything of it at the time. He remembers in hindsight his father coming home from work early and going up and asking [K.H.] to go take naps with him in the bedroom and going to lock the door. He also talks about the confession or statement made about, ["]yes, these things happened,["] and even later in the kitchen saying, "Now that you know things happened," showing [Appellant's] state of mind.

*Id.*, 33.

These arguments were commensurate with and squarely based on the trial testimony. Arguments based on legitimate inferences from trial testimony are proper. *See Commonwealth v. Luster*, 71 A.3d 1029, 1048 (Pa. Super. 2013) (*en banc*); *Anderson*, 327 A.3d at 287.

In *Luster*, this Court rejected an ineffective assistance claim for failing to object to a prosecutor's argument that "constituted a fair inference based upon the evidence presented at trial." *Luster*, 71 A.3d at 1048. Appellant asserts that trial counsel should have objected because a "real confession" was not entered into evidence. Appellant's Brief, 26. Appellant does not define

"real confession," and we conclude that, in context, Appellant's multiple admissions could be fairly described in summation as confessions. A prosecutor's closing arguments "are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence." ***Commonwealth v. Holley***, 945 A.2d 241, 250 (Pa. Super. 2008).

The final allegation of ineffective assistance for not objecting to the prosecutor's summation is based on the final few sentences of the closing argument where the prosecutor asked the jury to believe K.H. and to find Appellant guilty beyond a reasonable doubt. ***See*** Appellant's Brief, 26. Trial counsel admitted that one defense he raised was suggesting that K.H. and Mother concocted a false accusation against Appellant to aid in Mother's custody action. N.T. Post Sentence Motion, 6/20/22, 97-98; ***see also*** N.T. Trial, 9/24/21, 17-18 (trial counsel arguing that the only basis for Mother's custody petition were the allegations by K.H. against Appellant). We find that, in context, the complained of passage – reproduced below – directly responded to the defense argument:

> Just remember, if [K.H.] and her mom and her brother … concocted this whole story, would there have been any inconsistencies? Would they have embellished the story? When [K.H.] was sitting here and testifying, I ask you to look at that and evaluate her testimony. I am asking that you believe her, and I am asking you find [Appellant] guilty beyond a reasonable doubt of all the offenses that are charged. Thank you very much for your time and the duty that you are doing. Thank you.

N.T. Trial, 9/24/20, 46.

"[A] prosecutor may respond to challenges to his witnesses' credibility." *Commonwealth v. Drummond*, 775 A.2d 849, 858 (Pa. Super. 2001) (*en banc*); *Anderson*, 327 A.3d at 284. Here, the prosecutor asked the jury to determine K.H.'s credibility based on proper factors, how the witnesses testified and their demeanor. This was permissible argument both as fair response and in support of the credibility of the Commonwealth's main witness. *See Commonwealth v. Charleston*, 94 A.3d 1012, 1023-24 (Pa. Super. 2014) (rejecting ineffectiveness claim for failing to object to prosecutor's credibility argument because it was based on the record and in fair response to defense arguments).

Accordingly, we affirm the PCRA court's order denying relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 8/8/2025